## NEW ORLEANS & N. E. R. CO. v. CLEMENTS.

(Circuit Court of Appeals, Fifth Circuit.  February 28, 1900.)

No. 839.

1. RAILROADS—ACTION FOR INJURY TO SWITCHMAN—EVIDENCE.

In an action by a foreman in railroad yards to recover for an injury received while attempting to release a set brake on a freight car being switched, by reason of a defect in the brake, a rule of the company for the government of "freight brakemen," requiring them to examine the brakes for themselves before using them, was irrelevant to the issues, and properly excluded.

2. APPEAL—REVIEW—QUESTIONS PRESENTED BY RECORD.

The correctness of rulings admitting answers to a certain line of questions on cross-examination cannot be reviewed where no ground was given for the objections made, and the record does not show the examination of the witness in chief.

3. SAME—ASSIGNMENT OF ERRORS.

The circuit court of appeals will not consider questions attempted to be raised upon an assignment of error directed to the refusal of the trial court to give instructions asked, which does not specify the errors as required by the rules, but which designates several instructions by number, and alleges error generally on the refusal to give all of them.

4. SAME—ARGUMENT OF COUNSEL.

Where, on the trial of an action for a personal injury, on objection by defendant to the argument made to the jury by plaintiff's counsel relating to the measure of damages, the judge directed the argument to proceed, stating that he would endeavor to cure the matter by his charge, and it does not appear from the record on appeal that the subject was again mentioned by court or counsel, and it was not urged by defendant as a ground for new trial, it must be presumed that the matter was not regarded as prejudicial, and it will not be held ground for reversal.

5. MASTER AND SERVANT—RAILROADS—DUTY TO INSPECT CARS.

The duty of a railroad company to make a reasonable inspection of cars which its employés are required to use and handle, whether its own or those of another company, is a positive one, which it owes to the employés; and for the failure of inspectors, to whom it has delegated such duty, to make a proper inspection, it is liable to an employé who is required to handle a defective car and is thereby injured, where, by reason of his employment or the circumstances of the case, he has no full opportunity to observe the defect.[1]

6. SAME—INJURY OF SERVANT—CONTRIBUTORY NEGLIGENCE.

Plaintiff was night foreman in the switch yards of defendant railroad company.  About 10 o'clock at night certain flat cars of another road arrived in the yards, and were inspected by the regular inspectors, after which plaintiff had an engine attached thereto and started to move them. After they had started and were moving slowly, he observed that a brake was set on one car, and, climbing on the next car, he started to step from one to the other; reaching forward and taking hold of the brake wheel as he did so.  The nut was gone from the top of the brake rod, and the wheel came off, causing him to fall between the cars, and he was run over and his arm crushed.  *Held*, that he could not be said, as a matter of law, to have been guilty of contributory negligence in failing to examine the brake, under the circumstances.

In Error to the Circuit Court of the United States for the Southern District of Mississippi.

[1] As to duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.

This is an action to recover damages for personal injuries, brought by E. T. Clements against the New Orleans & Northeastern Railroad Company, a corporation created under the laws of the state of Louisiana, and tried before the circuit court and a jury, in which a verdict and judgment were rendered against the defendant for $12,500. There was a motion by the railroad company for a new trial, which was overruled, and thereupon this writ of error was sued out. The defendant in error, Clements, was an employé of plaintiff in error in its Meridian yards, in the capacity of night yard foreman. It was his duty to place cars coming into Meridian on tracks or sidings where they belonged, according to the course of business of the company. The company had certain inspectors in the yard, whose duty it was to inspect all cars as they came in, and it was Clements' duty to handle such cars after they had been inspected. He had an engine and crew under him to assist in handling these cars. On the night of October 15, 1897, a train of flat or gondola cars, loaded with gravel, consigned to Meridian, reached Meridian on the Alabama Great Southern Railroad about 9 o'clock p. m. These cars were immediately inspected by the inspectors, and about 11 p. m. Clements proceeded to place the cars on their proper track. For this purpose he had the engine coupled to the cars, and on signal by him the engine pulled the cars forward. Clements, having first cut the cars intended to be moved from other cars to which they were coupled, started forward the way the cars were moving,—walking along the south side of the cars. Noticing that a brake on one of the cars—a flat car belonging to the Alabama Great Southern Railroad Company—was "set up," and that the car was jerking along impeded by the brake, he, in pursuance of his duty, climbed on front of the adjoining car in order to let the brake off. Having reached the platform of the connecting car, the cars then being slowly moving, he turned and stepped from that car forward to the end of the next car, where the brake was, at the same time reaching forward and taking hold of the brake wheel. The wheel of the brake came off, and Clements fell backward and against the end of the car from which he had just stepped, and thence to the ground, on the right side of the train,—the side opposite to that from which he had climbed,—and his left hand fell across the rail and was run over, and so injured that it had to be and was amputated. It transpired that the nut which belongs on the top of the brake rod was absent, and there was evidence that it had been off a day or two. This nut is for the purpose of holding the brake wheel on, and the brake wheel came off because of the absence of this nut. The action was predicated upon the alleged negligence of the company in not properly inspecting the car, the plaintiff alleging that he was exercising due care. The railroad company, in defense of the action, denied the alleged negligence, and also denied that the plaintiff was in the exercise of due care, and pleaded certain rules of the company which it claimed made it the duty of Clements to inspect the brake wheel, and averred that Clements had ample time and opportunity to so inspect said brake as to have discovered said defect and thus guard himself against injury, and that plaintiff was guilty of contributory negligence.

John W. Fewell, for plaintiff in error.
Hoke Smith, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts as above). The first assignment of error is based upon the following:

"On the cross-examination of plaintiff, E. T. Clements, the counsel of defendant asked the said Clements, who was testifying in his own behalf, the question, 'Now, Mr. Clements, didn't you get a large sum of money (four or five thousand dollars) from an accident insurance company, on a policy on your life and limb, at that time?' which question was objected to by the plaintiff's counsel as irrelevant and immaterial. The court sustained said objection, to which the defendant then and there, in open court, and in the presence of the jury, excepted."

The bill of exceptions does not show for what object the question was asked, nor how it was connected with any of the facts in the case. Our attention is called to no plea which made any such evidence material.

The second assignment of error is based on the following:

"On the redirect examination of the plaintiff, Clements, by the plaintiff's counsel, the following question was asked: 'What else was there for you to take hold of to steady yourself as you crossed from one car to the other, except the top of this?' (meaning the brake wheel). This question was objected to by defendant, the objection overruled, and defendant excepted. The witness answered, 'Nothing else, sir.' "

The bill of exceptions does not show any ground of objection. There is no statement of evidence showing, or tending to show, what, if any, connection the question bore to the other facts in the case. We find in another bill of exceptions that the plaintiff, Clements, gave evidence tending to show how he received his injury, —that it was in climbing from one car to another, and using a brake wheel to support himself,—in connection with which this question may have been admissible.

The third assignment of error is to the effect that the court erred in sustaining the objection of the plaintiff to the introduction of rule 242, as follows:

"Rule 242. Rules for Freight Brakemen. They are charged with the management of the brakes, and the proper display and use of train signals. They must examine and know for themselves that the brakes, ladders, running boards, steps, etc., which they are to use, are in proper condition, and, if not, put them so, or report them to the proper parties and have them put in order before using."

The bill of exceptions shows that the plaintiff objected to the introduction of this rule as irrelevant and immaterial to the issues, and the court sustained the objection. By its terms the rule is for the government of freight brakemen. The plaintiff in the case was a yard foreman, not ordinarily called to do a brakeman's duty, but in the instant case incidentally called to let off a certain brake. As to him, and the duties which he was called upon to perform, the rule is inapplicable, and its introduction could have in no wise benefited the plaintiff in error, but might have misled the jury. If the rule had any special application, the bill of exceptions should have set forth the facts showing such application. We cannot infer them, nor are we called upon to search the record for evidence upon which to sustain the objection.

The fourth assignment of error is that the court erred in overruling the objection of the defendant in the court below to the several questions, numbered 1 to 12, inclusive, asked on the cross-examination by plaintiff of the witness W. S. Orr. In regard to this matter the bill of exceptions shows the following:

"Upon the recross-examination of the witness, W. S. Orr, he was asked by the plaintiff's counsel the following questions: 'By Mr. Smith: Q. You had been working in that yard a good many years, hadn't you? A. About four years, or three and a half. 1 Q. Don't you know, Mr. Orr, the fact is that men handle the cars after they are turned over to them—use them—without inspection there, and had habitually done so? (Objected to by the defendant. Objection overruled, and the defendant excepted.) 2 Q. I will ask you another ques-

tion: Is it not true, Mr. Orr, that, outside of the inspectors, that the other employés in your yard at Meridian prior to the time when Mr. Clements was hurt, and for a long time prior to that, did not undertake to inspect the tools and machinery for their use, to see to its condition? (Objected to by the defendant. Objection overruled, and defendant excepted.) A. I don't exactly understand what you mean. 3 Q. I read you this rule, and I will ask you if this is not true: That that, as a rule, was entirely disregarded and abrogated in your yard: "Employés of every grade are warned. * * *" Is it not true, now, that the ordinary hands in the yard there, who were handling the brakes, —handling the cars,—didn't undertake to examine them, and didn't undertake to see that they were in proper condition, but relied upon the inspection of the inspectors? A. Yes, sir; I think so. Q. That is true, isn't it? A. Yes, sir. 4 Q. Isn't it true that— A. In some cases they did, and in some they didn't. 5 Q. Well, now, in what cases? A. Well, sometimes they would take a train and go off with it, and they don't care if it was inspected or not. 6 Q. Well, I was talking about the yardmen? A. Well, that is the same thing. 7 Q. They would sometimes take a train before you inspected it? A. Yes, sir. 8 Q. Isn't it true that they did not undertake—the separate employés—to inspect for themselves? A. Yes, sir; that is right. 9 Q. They never did that? A. No. 10 Q. They were never required to do that in that yard, were they? A. Not that I know of, they weren't. Mr. Smith: 11 Q. What you stated was, as I understood you, in point of practice the men actually handling the trains didn't undertake to do any inspecting? A. None at all that I knew of, they didn't. Q. And you had been there how many years? A. Three and a half. Q. Prior to this accident? A. Yes, sir.' To each one of said questions, numbered 1 to 12, both inclusive, when each was asked, and to the answers thereto, the defendant then and there objected, and said objections were each overruled by the court, and the answers thereto permitted to go to the jury, to which several rulings the defendant then and there excepted. The said questions and answers being of the same nature, and eliciting answers directed to the establishment of the same point, they are not set out separately, but exceptions were separately taken."

The ground of objection to these questions is not set out. We are not informed what the direct examination of the witness was, and we are left wholly to inference as to whether the cross-examination was upon matters brought in chief, or was entirely independent thereof.

The fifth assignment of error is that the court erred in overruling the objection of defendant to the questions put by plaintiff below to his witness A. Moritz as to whether any rule was in force in the yard, prior to Clements' injuries, which required the men other than inspectors to inspect machinery, and as to what knowledge witness has as to whether foreman and men undertook to inspect each piece of machinery before using it, and whether they relied in practice upon the inspection already made, and whether witness, as a superior officer of men, knew and approved of men not making inspection, and that the train master was often in yard and saw how it was done. The bill of exceptions shows that the objection to Mr. Moritz's evidence was general, no reason being given, and we are unable to form an opinion as to whether or not it was admissible under the pleadings and evidence in the case. The same may be said as to the sixth exception, relating to the same witness' evidence, except to the question what length of time it would take a brakeman to examine the fixtures of each brake. The objection made was that it was a matter of opinion. If the question was otherwise proper,—and we presume it was,—we fail to see anything in the particular objection made.

The seventh assignment of error reads as follows:

"The court erred in refusing to give to the jury the instructions requested by defendant, and numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, and 14, which said instructions are set out in the special bill of exceptions No. 2, herewith presented and referred to."

Our rule 11 (31 C. C. A. cxlvi., 90 Fed. cxlvi.) provides that, when the error alleged is to the charge of the court, the assignment of errors shall set out the error referred to in totidem verbis, whether it be in the instructions given, or in the instructions refused. In Gallot v. U. S., 87 Fed. 446, 31 C. C. A. 44, this court held:

"By the twenty-third and twenty-fourth assignments of errors we are informed that the court below erred in its charge given to the jury, in each portion thereof marked by lines in said written opinion, and marked 1, 2, 3, 4, 5, 6, 7, 8, and 9, and shown in the bill of exceptions No. 5, and the court erred in refusing each of the several charges and instructions in Nos. 2 and 5, as shown in the bill of exceptions. * * * The assignments of errors Nos. 19, 20, 23, and 24 being in violation of the above rules 10 and 11 of this court, we decline to examine and pass upon the questions attempted to be raised thereby." 87 Fed. 447, 448, 31 C. C. A. 45, 46.

See Distilling Co. v. Rheinstrom, 30 C. C. A. 10, 86 Fed. 244; Grape Creek Coal Co. v. Farmers' Loan & Trust Co., 12 C. C. A. 350, 63 Fed. 891; National Bank of Commerce of Kansas City v. First Nat. Bank of Kansas City, 10 C. C. A. 87, 61 Fed. 809; Haldane v. U. S., 16 C. C. A. 447, 69 Fed. 819.

The eighth assignment of error is that the court erred in denying the motion of defendant to exclude the evidence adduced by the plaintiff, and render a judgment for the defendant. This assignment of error does not appear to be insisted upon, and is, under the evidence in the case as set forth in the bill of exceptions, evidently not well taken.

The ninth assignment of error is based upon the following proceedings:

"Be it remembered, that on the trial of this cause on the 18th day of March, 1899, at a regular term of said court, before the court and jury, Mr. Hoke Smith, of counsel for plaintiff, making the concluding address to the jury, among other things, spoke in his said address to the jury as follows: 'It [referring to tables of expectations offered in evidence] don't mean that all men will die at sixty-six, or that any one man will die at sixty-six, but it means that the average length of life of men thirty-three years old is thirty-three years more. Some may stretch it to eighty or eighty-five, some may drop by the wayside at forty or thirty-five, but the average life of a man thirty-three years old is thirty-three years more. Now, we have no power of prophecy. We are unable to tell how long Mr. Clements will live, but can with reasonable accuracy act upon his life by saying we will allow him the average life of a man thirty-three years old. That is what the law allows me to put this table in for,—to give the average life of a man thirty-three years of age, so you can, in estimating his loss, estimate by the average. Now, gentlemen of the jury, under this proof his average loss is $840 a year for 33 years. That would run up into the neighborhood of thirty thousand dollars, but I don't claim, gentlemen of the jury, that he is entitled to multiply his losses for the year with the number of years, because if he lived the 33 years he would have gotten this, sum year by year until the end of the time, and the amount that is paid under your verdict is paid in cash, and it would not be right to ask you to give him the same. You have to give him what is termed the "present value" of the money. What is the present value of a yearly payment of $840 a year for thirty-three years? Now, the present value of one dollar for 33 years, at 6 per

cent. is about $13. The present value, therefore, of $840 for that length of time would be 840 times $13, or about $11,000. That part of his recovery is capable of mathematical estimation, and is not left to your discretion.' (The defendant here interposed an objection to the line of argument, because it is not based upon a correct theory of the law. Defendant thereupon moved the court to instruct the jury to disregard the argument.) The Court: Proceed with the argument. Mr. Fewell: You overrule my motion? (No reply.) I do not admit he is entitled to any amount. I do not find, if your honor please, where any rule is positively laid down— The Court: Proceed with the argument of the case. I will endeavor to cure this thing when I instruct the jury.

"The defendant then and there, in the presence of the jury, by its counsel, excepted to the action of the court above set out, and tenders this, its bill of exceptions, which is signed and sealed, and made part of the record, this 9th day of May, 1899.                                              H. C. Niles, Judge."

From these proceedings, we take it that the trial judge expressed his disapproval of the line of argument pursued, and said, "I will endeavor to cure this thing when I instruct the jury." Whether he did further express his disapproval to the jury can be determined only by inference. Another bill of exceptions purports to give the oral charge of the judge to the jury, in connection with 18 requested instructions. Neither in the oral charge nor in the requested instructions is any mention made of the question of, or amount of, damages, or the rules to be observed by the jury in determining the same. Nowhere is it stated that these requests or instructions were the only instructions asked or acted upon by the court. It may well be that in some instruction given to the jury the judge gave the proper rule for damages, and carried out his suggestion that he would cure the matter as to the line of Mr. Hoke Smith's argument. Assuming, however, as may be the fact, that nothing further was said about it, on the showing made we are unable to say that the action of the court in relation to Mr. Smith's argument constitutes reversible error. Counsel for plaintiff in error relies upon the decision of this court in Railroad Co. v. Carroll, 28 C. C. A. 207, 84 Fed. 778, 781, et seq., in which case a very similar, though much more objectionable, argument was presented to the jury. The record in that case will show that the trial judge ' expressed no disapproval whatever of the argument used, nor undertook in any way to correct the effect of the same. In the opinion in that case the court said:

"We understand the general rule to be that the remarks of counsel to the jury on the merits, to constitute reversible error, must be objected to at the time, be unwarranted by the pleadings and evidence, have a tendency to mislead or prejudice the jury, and be, to more or less extent, approved by the trial judge."

In the instant case there is nothing to show whether or not the remarks complained of were warranted by the evidence, but the case does show that the remarks were more or less disapproved of by the trial judge, and, if there was error on the part of the trial judge, it was because he did not thereafter instruct the jury as to the proper weight to be given to the argument in question; and in this regard, as counsel for the defendant apparently made no further suggestions to the judge in relation thereto, nor asked any special instruction thereon, we are inclined to the opinion that

the matter was considered of so little importance, in view of the main issues in the case, that it escaped the attention of both the judge and the counsel. The matter was not considered of sufficient importance to urge with other grounds in the motion for a new trial, and we are confident that, in view of the large verdict, both the counsel and the trial judge would have laid great stress on any matter of record appreciably tending to show prejudice on the part of the jury in the matter of damages.

The tenth and eleventh assignments of error complain of certain rulings on demurrers, but are not insisted upon,—at least, no argument is submitted in support of them. The twelfth assignment of error complains of the overruling of a motion for a new trial, and needs no notice.

This disposes of all the formal assignments of error, and practically disposes of the case; for, upon the real question presented, and which has been very elaborately and ably argued by counsel for plaintiff in error, we do not agree with his contention. The record shows that the plaintiff in error (defendant below) requested the court to charge the jury, among other things, the following propositions:

"It appearing that the usual and proper inspection was made of the car by competent inspectors, the action fails, and the jury will find for the defendant. Under the law, the railroad company was not the insurer or guarantor of the life or limb of the plaintiff. The only duty it owed to him was to use ordinary and reasonable care to guard him against danger, and, if the railroad company used such care in this case, the law is with the railroad company, the defendant, and the jury will so find; that is, a verdict, 'We, the jury, find for the defendant.' This suit is based on the charge that the defendant railroad company was guilty of negligence, and, unless the testimony shows that it was guilty of negligence in not discovering the absence of the nut, the jury will find for the defendant. The inspectors were not bound to the most careful or strictest inspection, but only to ordinary and reasonable care under the circumstances. It is the duty of the railroad company to exercise ordinary care in furnishing reasonably safe cars and other appliances, and also to exercise ordinary care in their inspection, so as not to unreasonably expose its employés to unknown and extraordinary hazards. A railroad company is not required to furnish cars or appliances that are absolutely safe, or to maintain them in that condition. The company is not an insurer of the safety of the employé against injury. The company is not liable for injuries caused by defects of which it had no knowledge, and of which it could not have known by the exercise of ordinary care. The company is only charged with knowledge of that which by the exercise of ordinary care it would have discovered. It is not required to resort to tests that are impracticable or oppressive and unreasonable, or which would be incompatible with the proper furtherance of business, and which are only required to insure absolute safety. If the duty of inspection has been performed with ordinary care, and the defect is found afterwards to exist, but is not discovered at the time, the master is not liable for an injury caused thereby, unless he had knowledge of such defect. The inspection which the company is required to make of cars from other roads is not merely a formal one, but should be made with ordinary care; that is, the inspection should be such as the time and place, means and opportunity, will permit."

The rule sought to be presented by these instructions and charges is that, while it is the duty of the railroad company to make proper inspection and look after the condition of cars that it calls upon it employés to use, when the railroad company has appointed proper and capable inspectors, and provided by its rules that these in-

spectors shall make due and proper inspection, and the inspectors have made inspection, then the duty of the railroad company is performed, and no negligence can be imputed to the company because the inspection has not been thorough and complete. In Railroad Co. v. Herbert, 116 U. S. 642, 652, 6 Sup. Ct. 590, 595, 29 L. Ed. 755, 760, the court say:

"If no one was appointed by the company to look after the condition of the cars, and see that the machinery and appliances used to move and to stop them were kept in repair and in good working order, its liability for the injuries would not be the subject of contention. Its negligence in that case would have been in the highest degree culpable. If, however, one was appointed by it, charged with that duty, and the injuries resulted from his negligence in its performance, the company is liable. He was, so far as that duty is concerned, the representative of the company. His negligence was its negligence, and imposed a liability upon it, unless, as contended, it was relieved therefrom by the statute of Dakota."

Railroad Co. v. Herbert, supra, has been affirmed and followed by the supreme court in many cases. See Railroad Co. v. McDade, 135 U. S. 569, 10 Sup. Ct. 1044, 34 L. Ed. 235; Railway Co. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905, 36 L. Ed. 829; Railroad Co. v. Hambly, 154 U. S. 357, 14 Sup. Ct. 983, 38 L. Ed. 1009.

In Railway Co. v. Barrett, 166 U. S. 617, 619, 17 Sup. Ct. 707, 708, 41 L. Ed. 1136, 1139, the following charge was indorsed:

"A railway company is bound to use ordinary care to furnish safe machinery and appliances for the use of its employés, and the neglect of its agents in that regard is its neglect. That it is not bound to insure the absolute safety thereof, nor to apply the best and safest and newest of such mechanical appliances, but is bound to use all reasonable care and prudence in providing machinery reasonably safe and suitable for use, and in keeping the same in repair. That, 'by "ordinary care" is meant such as a prudent man would use under the same circumstances. It must be measured by the character and risks of such business. And where such persons, whose duty it is to repair the appliances of the business, know, or ought to know, by the exercise of reasonable care, of the defects in the machinery, the company is responsible for their neglect.'"

In Railroad Co. v. Mackey, 157 U. S. 72, 87, 15 Sup. Ct. 491, 496, 39 L. Ed. 624, 630, the court said:

"The corporation is not to be held as guarantying or warranting the absolute safety, under all circumstances, or the perfection in all its parts, of the machinery or apparatus which may be provided for the use of employés. Its duty in that respect to its employés is discharged when, but only when, its agents whose business it is to supply such instrumentalities exercise due care as well in their purchase originally as in keeping and maintaining them in such condition as to be reasonably and adequately safe for use by employés."

In Railway Co. v. Daniels, 152 U. S. 684, 689, 14 Sup. Ct. 756, 758, 38 L. Ed. 597, 601, after defining the risks assumed by a servant, the court said:

"But, within such limits, the master who provides the place, the tools, and the machinery owes a positive duty to his employé in respect thereto. That positive duty does not go to the extent of a guaranty of safety, but it does require that reasonable precautions be taken to secure safety; and it matters not to the employé by whom that safety is secured, or the reasonable precautions therefor taken. He has a right to look to the master for the discharge of that duty, and if the master, instead of discharging it himself, sees fit to have it attended to by others, that does not change the measure of obliga-

tion to the employé, or the latter's right to insist that reasonable precaution shall be taken to secure safety in these respects."

See, also, Railroad Co. v. Baugh, 149 U. S. 388, 13 Sup. Ct. 94, 37 L. Ed. 772.

"It is the duty of the railroad company to use reasonable care to see that the cars employed on its road, both those which it owns and those which it receives from other roads, are in good order, and fit for the purposes for which they are intended; and this duty it owes to its employés as well as to the public." Railway Co. v. Archibald, 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188.

In the light of these decisions, we understand the law to be that, as to patent defects in machinery furnished by railroad companies for the employés to use, the railroad companies are insurers in all cases where the employé, by reason of his employment or the circumstances of the case, has no full opportunity, before using the machinery in question, to observe and note the patent defect; and the rule is the same with regard to all defects that can be discovered on proper examination and inspection.

In the present case the defendant in error was not called upon by his duty to make any particular inspection of the cars turned over to him after the regular inspection. As to the particular defect which resulted in his injury, the proof is clear that although the defect was patent, and could and would have been readily noticed by any employé called ordinarily to use the same, the defendant was called upon to use it at night, in an emergency, and without opportunity to examine or inspect the same. It may be, as counsel for plaintiff in error argued, that he knew that the car had lately come in from another road; that after he reached the platform of the car he could, with the slightest movement of his hand, or instantaneous movement of his lantern, have discovered the condition of the brake (that is, the absence of the nut); and that upon that discovery he could have used the brake ("let it off") in such a way that he would not have been injured. But the trouble is, he had no opportunity to examine the condition of the brake with his hand, or by any movement of the lantern. In the line of his duty, he was climbing on top of the car as it was moving, and he reached for and caught the brake to support himself preparatory to using the same; and to say, under such circumstances, that he should have made a preliminary inspection, is contrary to both reason and authority. On the whole case,—and we have examined it with great care,—we are constrained to hold that the record shows no reversible error on the trial, and the judgment must be affirmed.