REPUBLIC ELEVATOR CO. v. LUND et al.

(Circuit Court of Appeals, Eighth Circuit. May 13, 1912.)

No. 3,678.

1. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—ACTIONS—QUESTIONS FOR JURY.

Plaintiff, who was in the employ of defendant elevator company, was directed by the foreman to take a car which had been unloaded down an inclined track to the railroad yard. In doing so it was the custom for the employé to mount and ride the car, setting the brake when it reached the proper place. In this instance plaintiff testified that the brake would not work, and that the car ran into another, causing him to be thrown off and injured. There was other testimony that on an inspection immediately after the injury the brake rod was found to be broken or disconnected so that the brake would not work. There was also testimony to the contrary. Held, that such testimony constituted substantial evidence that the brake was defective prior to the injury, and that defendant might have discovered the defect by the exercise of ordinary care, and justified the submission of such questions to the jury as well as the questions of plaintiff's negligence and assumption of the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1010–1050; Dec. Dig. § 286.*]

2. MASTER AND SERVANT (§ 208*)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

A servant is entitled to act on the assumption that the master has performed the duty of exercising reasonable care to provide him with a reasonably safe working place, and reasonably safe appliances with which to work, unless the contrary is known to him or is so patent as to be readily observable by him, and he is not required to make an in-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

dependent investigation or inspection under penalty of being held to have assumed the risk of danger from the master's breach of duty.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 551; Dec. Dig. § 208.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

3. MASTER AND SERVANT (§ 124*)—INJURIES TO SERVANT—RAILROAD CARS OPERATED BY MASTER—INSPECTION.

An elevator company which received cars containing grain to be passed through its elevator from a railroad company in one part of the latter's yards moved them at its convenience with its own employés on a downgrade track to its elevator, and, after they were unloaded, on down the track to another part of the yards where they were redelivered to the railroad company, while the cars were so in its possession was under the duty to its employés operating the same to exercise reasonable care, by inspection or otherwise, to see that the cars were in good order, and proper condition for handling.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 235–242; Dec. Dig. § 124.*]

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Minnesota.

Action at law by Ole H. Lund against the Republic Elevator Company and the Northern Pacific Railway Company. Judgment for plaintiff against the Elevator Company alone, and it brings error. Affirmed.

This was a suit for damages for personal injuries. Plaintiff Lund in his complaint charged that his injuries were occasioned by the negligent conduct of the Northern Pacific Railway Company in delivering a car to his employer, the Republic Elevator Company, to be handled by it, which had defective braking appliance and by the negligent conduct of the Elevator Company in directing plaintiff, its employé, to take it down a grade without first having inspected it or ascertained its condition, thereby failing to exercise ordinary care to furnish him a reasonably safe place to work in or a reasonably safe appliance to work with. Plaintiff claimed that as he undertook to perform the task assigned him the brake failed to work, and the car violently collided with another car at or near the foot of the grade, and threw him off, and injured him.

Both defendants answered the complaint, denying the negligence attributed to them, and pleading contributory negligence and assumption of the risk by Lund. At the trial voluminous evidence was heard without objection to its introduction by either side, and at its close each defendant made a request for an instructed verdict in its favor, which the court refused to grant. After an exhaustive charge to which no exception was taken by either defendant, the jury returned a verdict in favor of the Railway Company, but against the Elevator Company. To reverse the judgment rendered on this verdict this writ of error is prosecuted by the judgment debtor.

Cobb & Wheelwright, John I. Dille, and F. A. Stewart, for plaintiff in error.

Francis B. Hart (Thomas D. Schall, on the brief), for defendant in error Lund.

Emerson Hadley, for defendant in error, Northern Pac. R. Co.

Before SANBORN, ADAMS, and CARLAND, Circuit Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ADAMS, Circuit Judge (after stating the facts as above). [1] From the foregoing brief statement of the case it appears that the only question for our consideration is whether the court erred in declining to direct a verdict for the Elevator Company. This involves the inquiry whether the verdict as rendered is supported by substantial evidence.

The Elevator Company was engaged in the usual work of such companies at or near the yards of the Railway Company. Its elevator building was located on tracks of the Railway Company leading on a downgrade from its yard on the north to another part of its yard on the south. The practice was when the Railway Company desired elevation services for it to deliver cars to the Elevator Company by placing them on this inclined way near its upper or northern end subject to the control of the Elevator Company to be taken down by it to the elevator either by cable or gravity as the case might be, whenever it was ready to perform the service. If the same was for unloading, the practice was to stop the car at the proper leg of the elevator, unload the same, and afterward take it out of the way, down to the lower yard. This was done by directing an employé to mount the car, unloosen the brake, and ride it down the grade, and, on reaching the proper destination, tightening up the brake and stopping it.

On the morning of the accident in question two cars chained together, one loaded and placarded "in bad order" and the other unloaded, were brought down to the elevator, and the loaded car was stopped at one of the legs of the elevator to be unloaded. After this was done, plaintiff was directed by the foreman in charge of the Elevator Company's work to ride the two down to the lower yards. He mounted the first car, namely, the one which had been unloaded, loosened the brake, another employé having, according to the usual practice, simultaneously set the cars in motion with a pinch bar, and started down the grade. The plaintiff testified that, when he undertook to stop the car or to exercise control over it, his brake refused to work, and the car, notwithstanding his best efforts to stop it, dashed against another car in the lower yard, threw him off, and seriously injured him.

The foreman of the Elevator Company testified that immediately after the accident he inspected the car and found the brake in "bad shape" as he called it. He found the chain attached to the lower end of the brake-shaft was all taken up, and wound tightly about the shaft, thereby forcing the end of the rod extending between the chain and the brake beam against the shaft itself, effectually preventing any further action of the brakes or exertion of power upon the brakes. He testified that the rod was either broken or disconnected from the brake shoes so that it could not operate upon them at all. There was also testimony of others to the contrary effect, namely, that the brake and connecting rod were found to be in perfect condition immediately after the accident. Was this testimony sufficient to take the case to the jury? We think it was.

It is first suggested that plaintiff admitted that the brake was properly set when he first mounted the car and undertook its manipulation.

Lund was apparently an ignorant man, and in answering questions categorically on cross-examination admitted that the brake operated in the usual way when he first loosened it to start down the grade; in other words, that, when he turned the wheel and apparently released the brake, which had before then been set to stop the car at the elevator, the car started down and there did not seem to be anything wrong with it, but in connection with this evidence he says, as soon as he tried to set it again, it would not work. We think this proof is not at all inconsistent with the contention of the plaintiff. It may well be that the car would start when the pinch bar was applied to the wheel upon the mere unwinding of the chain around the brake shaft, and yet might not be stopped on account of the defective brake appliance complained of.

It is also contended that there was no evidence of negligence except the occurrence of the accident itself. If that were so, inasmuch as the principle expressed by the maxim res ipsa loquitur has no application to cases between the employer and employé, no case would have been made against the defendant. Chicago & N. W. Ry. Co. v. O'Brien, 132 Fed. 593, 67 C. C. A. 421. But the facts already detailed do not warrant the contention. There was, in our opinion, substantial evidence that the brake rod had either been broken or disconnected from the brake shoes prior to the time of the accident, and that the Elevator Company might by the exercise of ordinary care have ascertained that fact. The evidence tends to show that the car had been inspected by the Railway Company in its own yard four days before the accident and found in good condition, but this is evidential only of its condition on the day of the accident, and must be considered in connection with all the other evidence in the case in determining the ultimate fact whether there was culpable negligence by the defendant in not ascertaining the defective condition of the brake, and directing the plaintiff to operate it as it was.

[2] Again, it was contended that the plaintiff assumed the risk of being hurt while in this particular employment. The trial judge charged the jury that the Elevator Company owed the duty to plaintiff, its employé, to exercise reasonable care to furnish him a reasonably safe appliance with which to perform his service. He carefully advised the jury concerning the effect of the inspection claimed to have been made by the Railway Company, and that it was available to the Elevator Company as tending to show the exercise of the required reasonable care by it.

On the subject of plaintiff's assumption of the risk he charged as follows:

"If you believe that a reasonably prudent workman would have discovered the defective condition of the car, considering all the plaintiff's experience, considering the whole course of business in that yard, considering the outward indications of a defective condition on the car itself, this car, being marked 'bad order,' I say, considering all these circumstances, if you say that a reasonably prudent workman employed in the performance of the service which the plaintiff was employed in performing, would have discovered that defect, then it was the duty of the plaintiff to discover it. He assumed the risk of any injury arising from such a defect, that could

thus be detected; and, if the defect was of such a character, that ends the case, and it would be your duty to return a verdict in favor of the defendants."

In this part of the charge the court imposed an unwarrantable burden on the plaintiff. The law is well settled that an employé may rest confidently in the assurance that his employer has performed his full duty in furnishing him a reasonably safe place to work in or reasonably safe appliances to work with, and that no obligation is imposed upon him to exercise any degree of diligence to affirmatively ascertain whether his employer has performed that duty. The employé assumes the ordinary risks of his employment, but does not assume those arising from the negligence of his employer, unless the defects constituting the negligence are either known to him or plainly observable by him. This is the settled doctrine of the Supreme Court and of our court. Texas & Pac. Ry. v. Archibald, 170 U. S. 665, 672, 18 Sup. Ct. 777, 42 L. Ed. 1188; Choctaw, Oklahoma, etc., R. R. Co. v. McDade, 191 U. S. 64, 68, 24 Sup. Ct. 24, 48 L. Ed. 96; Texas & Pacific Ry. Co. v. Swearingen, 196 U. S. 51, 62, 25 Sup. Ct. 164, 49 L. Ed. 382; Kreigh v. Westinghouse, etc., Co., 214 U. S. 249, 255, 256, 29 Sup. Ct. 619, 53 L. Ed. 984; Schlemmer v. Buffalo, etc., Ry. Co., 220 U. S. 590, 596, 31 Sup. Ct. 561, 55 L. Ed. 596; Kirkpatrick v. St. Louis & S. F. R. R. Co., 87 C. C. A. 35, 159 Fed. 855, 858; United States Smelting Co. v. Parry, 92 C. C. A. 159, 166 Fed. 407; Central Coal & Coke Co. v. Williams, 97 C. C. A. 597, 173 Fed. 337; Maki v. Union Pac. Coal Co., 109 C. C. A. 221, 187 Fed. 389; Chicago, Burlington & Quincy R. Co. v. Shalstrom (C. C. A.) 195 Fed. 725, just decided.

In Texas & Pacific Ry. v. Archibald, the Supreme Court said:

"The employé, on the other hand, has the right to rest on the assumption that appliances furnished are free from defects discoverable by proper inspection, and is not submitted to the danger of using appliances containing such defects because of his knowledge of the general methods adopted by the employer in carrying on his business, or because by ordinary care he might have known of the methods and inferred therefrom that danger of unsafe appliances might arise."

In that case the Supreme Court expressly disapproved of an instruction which imposed upon the employé the necessity of exercising ordinary care to ascertain whether his employer had been negligent in furnishing him defective cars.

In Choctaw, Oklahoma, etc., R. R. Co. v. McDade, the Supreme Court said:

"The employé is not obliged to pass judgment upon the employer's methods of transacting his business, but may assume that reasonable care will be used in furnishing the appliances necessary for its operation. This rule is subject to the exception that, where a defect is known to the employé or is so patent as to be readily observed by him, he cannot continue to use the defective apparatus in the face of knowledge and without objection, without assuming the hazard incident to such a situation."

In United States Smelting Co. v. Parry this court said:

"But it is earnestly contended that it was conclusively shown that the plaintiff assumed the risk and was guilty of contributory negligence because

he did nothing to satisfy himself of the security of the scaffold, and because it would have taken but a moment to ascertain how the planks were supported at the east end and whether they were nailed at the other end. The contention cannot be sustained. It is the duty of a master to exercise reasonable care to provide a reasonably safe working place for his servant, and the latter is entitled to act upon the assumption that that duty has been performed, unless the contrary be known to him, or be so patent as to be readily observed by him. He is not required to make an investigation or inspection to ascertain whether or not that duty has been performed, but only to have due regard for what he actually knows and for what is so patent as to be readily observed by him, by the reasonable use of his senses, having in view his age, intelligence, and experience."

In Kirkpatrick v. St. Louis & S. F. R. R. Co., the court again said:

"If the risks and dangers which caused his death were the usual and ordinary risks and dangers of the employment, he assumed them, provided they were known to and appreciated by him. * * * If, on the other hand, they were not the usual and ordinary risks and dangers, but arose from negligent defects in appliances or a negligent method of operating them required by the master, then he assumed all risks and dangers arising from such defects and such operation, if they were known to him, or if they were plainly observable by him."

In Central Coal & Coke Co. v. Williams, this court said, again referring to an instruction given by the trial court:

"This, in effect, told the jury that a servant entering or continuing in the employ of a master is charged with the affirmative duty of exercising reasonable care to find out whether the place provided for him to work in is safe. We have repeatedly held that no such obligation is imposed upon the servant. He has a right to assume that the master has performed his whole duty and that the place is reasonably safe. It is only when it is known by the servant not to be safe, or when it is patent to or plainly observable by him that it is not safe, that the servant assumes the risk of danger."

In Maki v. Union Pac. Coal Co., this court also said:

"While it is true that the servant does not assume the risk of his master's negligence, the effect of which is neither known to him nor readily observable, nor to be apprehended, yet he does, by continuing in the employment without complaint, assume the risk of the effect of such negligence which is known to him, or is obvious or plainly observable, and the danger of which is appreciated by him, or is clearly apparent, just as completely as he assumes the ordinary risks of his occupation."

There is nothing in the recent case of Chicago, Burlington & Quincy R. Co. v. Shalstrom, supra, at all inconsistent with the uniform rule laid down in the prior mentioned cases.

Adopting the language of Mr. Justice Van Devanter in the Parry Case, we there held merely that a given defect must be known to an employé or so patent as to be readily observed by him by the reasonable use of his senses, having in view his intelligence, age, and experience.

The inquiry with reference to an employé's intelligence, age, and experience must not be directed to what he ought in the exercise of reasonable care to have known or seen but to what was in fact patent to or plainly observable by him, the particular employé in question, in view of his own information, intelligence and experience. This is clearly indicated in the Parry Case.

Notwithstanding the disadvantage to the plaintiff to which the trial judge's erroneous charge subjected him, the jury found in effect that he did not assume the risk of injury by reason of the defective brake. This finding we think was supported by abundant evidence. The plaintiff testified that he did not see the "bad order" placard on the car relied upon by defendant as imparting knowledge to him; and, even if he did, it is apparent that the placard might have indicated to his mind many other things besides a defective brake, like for instance, a leaky roof, disordered coupling, broken door, etc., any one of which would have necessitated a transfer of the grain to another car. Certainly there was no evidence conclusive or otherwise that plaintiff knew of the defective brake, or that it was plainly observable by him.

[3] The contention that the Elevator Company owed no duty to its employé, Lund, either to furnish him safe appliances to work with or to observe any degree of care for his safety, is without merit. It is argued that the Elevator Company was not a transportation company, did not own any cars; but merely received them from the Railway Company for elevation purposes and returned them to it as soon as its service was ended. This may be true, but it had the cars under its control and subject to its orders for an indefinite time, in this case four days, and its business was to operate them in the performance of the service undertaken by them, for a consideration paid therefor.

Whether it was strictly speaking a transportation company or business company, it was actually engaged, as an important incident to its main business, in the control, handling and movement of cars over an inclined and dangerous track. This necessitated the employment of servants, and in our opinion carried with it the obligation of reasonable care whether of inspection or otherwise for their safety. Union Stockyards Co. v. Goodwin, 57 Neb. 138, 141, 77 N. W. 357, and cases cited: Railroad Co. v. Penfold, 57 Kan. 148, 45 Pac. 574; Baltimore & Potomac R. v. Mackey, 157 U. S. 72, 15 Sup. Ct. 491, 39 L. Ed. 624; Texas & Pacific Railway v. Archibald, 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188; Union Stockyards Co. v. Chicago, etc., R. R. Co., 196 U. S. 217, 25 Sup. Ct. 226, 49 L. Ed. 453, 2 Ann. Cas. 525; Felton v. Bullard, 37 C. C. A. 1, 94 Fed. 781; D., T. & Ft. W. R. R. Co. v. Smock, 23 Colo. 456, 48 Pac. 681; New Orleans & N. E. R. Co. v. Clements, 40 C. C. A. 465, 100 Fed. 415.

It is also contended that the verdict of the jury presents an inconsistency which required the granting of a new trial, and that the overruling of a motion therefor constituted an abuse of judicial discretion. It is claimed that the finding against the Elevator Company is inconsistent with the finding for the Railway Company. In view of the pleadings and the issues joined in the case, this cannot be true. The negligence charged against the Railway Company was different from that charged against the Elevator Company. The one was failure to properly inspect the cars. The other was a failure to use reasonable care to provide a reasonably safe appliance for employés to work with. Even if the latter involved the necessity of inspection the fact that the Elevator Company had the cars in its exclusive posses-

sion for at least four days when there was at least a possibility of their getting out of order might have required another and different inspection from that which had been made by the Railway Company.

In no view of the case presented by learned counsel for the defendant do we find any reversible error.

The judgment must therefore be affirmed.

SANBORN, Circuit Judge (dissenting). The fact that the accident happened and that after it happened there was evidence that the brake was disconnected or broken, or unserviceable, constitute no substantial evidence of the negligence of the Elevator Company because the doctrine res ipsa loquitur is inapplicable, as the majority say, to cases between employer and employé (Chicago & N. W. Ry. Co. v. O'Brien, 132 Fed. 593, 67 C. C. A. 421), and because the brake may have been broken or disconnected by the collision, or have become unserviceable after the empty car started down the incline, as the evidence seems to me to prove that it did.

In order to recover, the plaintiff was required by the law to prove that the brake was defective before he released it and started down the incline, that the Elevator Company then had notice or knowledge of that fact, or that, if it had faithfully discharged its duty to exercise reasonable care, it would have had such notice or knowledge at that time. Wood's Law of Master and Servant, § 414. The uncontradicted evidence established these facts: Just before the car was placed at the summit of the incline, the Railway Company thoroughly inspected it and found that the brake was in good order. The car was loaded, it was lowered down the incline to the leg of the elevator, and it was there stopped, loaded as it was, by this brake and held by it until the car was unloaded. The plaintiff testified seven times that after he went onto the empty car to lower it farther down the incline he released this brake. When a set brake in good order is released, it runs off, the brake-staff turns rapidly, while the chain that is wound around it releases itself. If the rod had been broken or disconnected from the brake shoes before the plaintiff released it, it would not have stopped or held the loaded car, and it would not have run off when released, but would have vacillated idly in its place, and the plaintiff could not have failed to perceive its defect the moment he seized it to release it. He testified that he released the set brake and that it acted as usual. There was, therefore, not only no proof that the brake was defective before he released it, but indisputable proof that it was not, and hence there was no evidence of negligence of the Elevator Company in failing to discover this defect which the evidence failed to show existed before the plaintiff's injury. Even if the question had been doubtful, whether the defect arose before or after the empty car started down the incline, as it seems to me it was not, the plaintiff could not have lawfully recovered, because the burden was on him to prove that it arose before and that it was known, or that it ought to have been known, to the Elevator Company before it sent him upon the car, and a verdict on a conjecture without substantial evidence to support it is erroneous. The acci-

dent may have been caused by the slipping of a pin which disconnected the brake rod from the brake shoes, or by a break in the connection of the brake staff with the brake shoes after the car started. It may have resulted from the failure of the plaintiff to prevent the car from gathering too much momentum before he applied the brake upon the descent, and the defect in the brake, if it ever existed, may have arisen when the car collided with that below. "It is not sufficient for the employé to show that the employer may have been guilty of negligence. The evidence must point to the fact that he was. And where the testimony leaves the matter uncertain, and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion." Patton v. Texas & Pacific R. Co., 179 U. S. 658, 663, 664, 21 Sup. Ct. 275, 277 (45 L. Ed. 361); Northern Pacific R. Co. v. Dixon, 139 Fed. 737, 740, 71 C. C. A. 555, 558; Illinois Central R. Co. v. Coughlin, 132 Fed. 801, 803, 65 C. C. A. 101, 103. There seems to me to be no substantial evidence in this record that the defect in the brake existed, and hence none that the Elevator Company had notice or knowledge, or could have had notice or knowledge of it before the plaintiff was sent upon the car to release the brake and lower it down the incline and for this reason I am unable to assent to the affirmance of the judgment below.