### TOWER LUMBER CO. v. BRANDVOLD.

(Circuit Court of Appeals, Eighth Circuit. October 9, 1905.)

No. 2,079.

MASTER AND SERVANT—INJURY OF SERVANT—CONTRIBUTORY NEGLIGENCE.

    Plaintiff was in the employ of defendant lumber company, and was sent out as one of a crew over a private logging railroad owned by defendant. The train was run backward, pushing in front some logging cars, back of which, next to the tender, was a flat car provided for the men and tools. The road was rough and likely to be obstructed by fallen trees and stones. Plaintiff, with some others, was sent forward at one point to remove an obstruction from the track, and in returning, instead of going upon the flat car with the other men, took a position on the front logging car, sitting on the end of a cross timber projecting beyond the side of the car, which was merely a skeleton car for carrying logs. In going down a grade the car was derailed and plaintiff was injured; none of those on the flat car receiving injury. *Held*, that the injury was due to plaintiff's own negligence and recklessness in unnecessarily taking a position of obvious danger, which was not justified or excused by the fact that it was acquiesced in by the foreman, and for which defendant was not liable.

    [Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 703, 754.]

In Error to the Circuit Court of the United States for the District of Minnesota.

H. H. Grace, for plaintiff in error.

John Jenswold, Jr., for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge. This action was instituted by John Brandvold, defendant in error, hereafter called plaintiff, against the Tower Lumber Company, defendant, to recover damages sustained by him by reason of the negligence of defendant in carelessly operating a logging train and maintaining an unsafe track over which the train was operated. The answer consists of a general denial and plea of contributory negligence.

The facts as disclosed by the record are these: The defendant, owning large tracts of timber land near Bear Head Lake, in Minnesota, constructed a sawmill and built a logging railroad connecting the Duluth & Iron Range Railroad with its mill and thence, by tracks and spurs, through the timber as occasion required. This road was not for public use in the carrying of freight or passengers. It was exclusively a private concern used for the purpose of milling and marketing timber. A short distance from the mill was a railroad camp or headquarters for the men, known as "Camp 2." From this camp, on the morning of April 14, 1902, the defendant started out a logging train consisting of locomotive, tender, flat car, and three logging cars, going in the reverse order, the locomotive backing the train into the timber. Plaintiff and 22 other men, all of whom were in the employ of defendant, boarded the train, taking their place on the flat car, which was specially provided to carry them and their working tools. The logging cars were about 24 feet long, composed of two longitudinal sills, and two cross-pieces, called "bunkers," one near each end of the car. These bunkers consisted of a piece of timber 9 or 10 feet long, extending well over the sides of the track from the longitudinal sills, with an upper surface of 11 inches. The train went on its way about a mile, when, observing some stones on the track, Foreman Pierson, who was riding on the tender, caused the train to be stopped, and the stones to be removed. The train had proceeded about a half a mile further when a fallen tree was observed across the track and it was again stopped. The foreman ordered some of the men riding on the flat car to go forward and remove the tree, and among them he wanted one, at least, who had an ax. Plaintiff, having an ax as required, went forward with two or three other men to remove the tree. The tree was lifted off the track and all the men except plaintiff returned to the flat car. Plaintiff, instead of returning to it, jumped upon the third logging car, which was in advance of all others as the train was being backed into the timber, and took his seat on the end of the bunker near the front and on the left side of the car as it was moving. Some diversity of views are expressed by the witnesses as to the exact place on the logging car where plaintiff sat, but the plaintiff testified as a witness in his own behalf and cleared up the matter. He testified substantially

to the effect that he sat on the end of the bunker, with his feet hanging down over the end, with nothing to steady or support him except his bare hands pressed against the side or edge of the bunker on which he sat. The uncontradicted evidence· is that the road was crudely constructed as a logging road only, with many curves and heavy grades, and liable to obstruction by falling trees and stones. Plaintiff had ridden on this road before, and was familiar with the general condition of the cars and track. After removing the tree from the track the train progressed about one-half a mile when it stopped, and plaintiff was called upon by the foreman to turn a switch located there. This he did, and afterwards returned to the logging car and again took his seat, the same as already described. The train again started, and soon took a steep downward grade. At or near the foot of this grade it had reached a speed, according to plaintiff's witnesses, of from 12 to 14 miles an hour. Plaintiff kept his seat on the end of the bunker with his face towards the side of the track, trying to steady himself by clutching the edge·of the bunker with his hands, until the car reached the foot of the grade, where it was derailed and plaintiff thrown off and injured. There is strong evidence that plaintiff was repeatedly warned of the danger of riding on the bunker and ordered back to the flat car where all the other workmen rode; but this evidence is contradicted by plaintiff, and accordingly cannot be considered for the present purposes. None of the other workmen, who rode on the flat car, were injured by the accident.

In the light of the foregoing testimony the defendant, at the end of the case, requested the trial court to instruct the jury that plaintiff was not entitled to recover, which the court refused to do. The controlling assignment of error is predicated on this refusal. In the view we take of the plea of contributory negligence, it is not necessary to consider the issue relating to defendant's negligence. In fact, for the purpose of this opinion, it may be assumed that there was substantial evidence of actionable negligence on the part of the defendant; but if the plaintiff, for want of ordinary care on his part, directly contributed to his injury, he cannot, on familiar principles of law, recover.

We cannot read the evidence, consisting largely of plaintiff's own statements, without being irresistibly led to the conclusion that he not only failed to observe ordinary care, but that he displayed a recklessness and disregard for his own safety of the grossest sort. A place of safety was provided for him and other workmen. He knew it, and at first occupied it. Afterwards, when he and other men were called to the front of the advancing train to remove obstacles from the track and the work was done and his co-employés returned to the flat car where they belonged, he mounted the skeleton car, and seated himself as already seen. There is no evidence that he was ordered or requested to go there for the discharge of any duty in behalf of the master. The evidence in our opinion conclusively shows that he voluntarily and needlessly exposed himself to danger; that he took a position upon the logging car full of obvious peril. Any unusual jolt or mishap, in the nature of things and according to common experience of mankind, would have dislodged him from his perilous position and subjected him to in-

jury. He was a full-grown man, and presumably possessed of common intelligence. By the use of his own senses, even the instinct which prompts men of ordinary prudence to self-protection, he should have realized his danger and abandoned his rash and foolhardy action. In these circumstances he cannot excuse his carelessness, as he attempts to do in his evidence, by saying he did not know or appreciate the danger of the situation. Tuttle v. Milwaukee Railway, 122 U. S. 189, 7 Sup. Ct. 1166, 30 L. Ed. 1114; King v. Morgan, 109 Fed. 446, 448, 48 C. C. A. 507, 509; St. Louis Cordage Co. v. Miller, 126 Fed. 495, 513, 61 C. C. A. 477, 63 L. R. A. 551, and cases cited.

We think this case falls fairly within the principles laid down by this court in Gilbert v. Burlington Railway Co., 128 Fed. 529, 63 C. C. A. 27, and is fully covered and controlled by the following cases: Railroad Company v. Houston, 95 U. S. 697, 24 L. Ed. 542; St. Louis, etc., Railway v. Schumacher, 152 U. S. 77, 14 Sup. Ct. 479, 38 L. Ed. 361, and Railroad Company v. Jones, 95 U. S. 439, 24 L. Ed. 506. The Jones Case is very similar in its facts to the one now before us. Jones was in the employ of the railroad company, engaged in constructing and repairing the roadway. The crew with which he was engaged was out with a train consisting of an engine, tender, and box car. When about to return to camp one evening, the conductor of the train told the men to jump on anywhere; that they were behind time, and must hurry. Jones jumped on the pilot of the locomotive, and was injured while on the way to camp. The box car was open, and contained plenty of room for plaintiff and the other workmen. The court, in its opinion, uses the following language:

"He [Jones] and another who rode beside him were the only persons hurt upon the train. All those in the box car, where he should have been, were uninjured. He would have escaped also if he had been there. His injury was due to his own recklessness and folly. He was himself the author of his misfortune."

In that case the Supreme Court holds that the knowledge, assent or direction of the company's agents as to what Jones did is immaterial. The court says:

"If told to get on anywhere, that the train was late, and that he must hurry, this was no justification for taking such a risk. As well might he have obeyed a suggestion to ride on the cowcatcher, or put himself on the track before the advancing wheels of the locomotive."

This last observation affords a complete answer to the contention of plaintiff's counsel, that the request of Foreman Pierson that plaintiff in this case should go forward and open a switch, was the equivalent of recognizing his right to be upon the logging car. If the company's agents could not, by their direct assent, justify the plaintiff's riding upon the logging car when no business of the company dictated or required such exposure, certainly the request that plaintiff should get off the car and open the switch would afford no justification by implication. See Chicago Great Western Ry. Co. v. Crotty (decided at this term) 141 Fed. 913.

After attentive consideration of all the evidence we are of opinion that plaintiff was guilty of negligence which directly contributed to his

injury, and that his conduct was such that all reasonable men, in the exercise of unbiased and impartial judgment would so say. Such being the case, the trial court should have directed a verdict for the defendant. Gilbert v. Burlington Ry. Co., supra. For failure to do so the judgment must be reversed and a new trial granted. It is so ordered.