## CHICAGO, B. & Q. RY. CO. v. GRIFFIN

(Circuit Court of Appeals, Eighth Circuit. November 11, 1907.)

### No. 2,578.

MASTER AND SERVANT—INJURY TO SERVANT—ASSUMPTION OF RISK.

Plaintiff, who for a number of years had been employed as engineer and fireman on engines on defendant's railroad, while working as fireman, was injured by the explosion of the glass water gauge in the cab of the engine. In an action to recover for the injury, the only negligence alleged against the defendant was the failure to cause the gauge to be inclosed in a screen to prevent the particles of glass from flying off in case of an explosion. Plaintiff knew that none of the gauges on defendant's engines were screened, and that they sometimes exploded, but made no complaint on that account, and testified that he never apprehended any danger from that source. Held that, under such circumstances, he as-

sumed the risk, and could not charge defendant with liability for his injury; that he was not relieved from such assumption of risk by the fact that a short time before he had been told by a foreman of defendant that the gauges then being used were made by a new process, and would not explode.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 584–592.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

George A. Mahan, for plaintiff in error.

T. M. Bresnehen and Harry K. West, for defendant in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and RINER, District Judge.

RINER, District Judge. This is an action for damages for personal injuries received by the defendant in error (referred to hereinafter as plaintiff) while in the employ of the plaintiff in error (referred to hereinafter as defendant) as a fireman on one of its engines, operated on its line of railroad between the cities of Hannibal and St. Joseph, Mo. The case was brought originally in the state court, and removed to the Circuit Court for the Northern Division of the Eastern District of Missouri. The plaintiff alleged in his petition that for a long time prior to the 27th of June, 1904, he had been a skillful and competent locomotive engineer, and a skillful and competent locomotive fireman. The testimony shows that he was engaged in this company's service as a locomotive fireman and engineer from the 10th day of September, 1899, to the 27th day of June, 1904. He further alleges in his petition that on the 27th of June, 1904, he was in the employ of the defendant on its line of railroad as a locomotive fireman, and on said day was engaged in the performance of his duties on one of the company's locomotive engines, numbered 525, used and operated on its line of railroad in Lynn county, Mo., between the cities of Hannibal and St. Joseph; that while so engaged, the water gauge, or glass, located in the cab of the engine, exploded, a piece of the glass striking him in the eye and permanently injuring it. He charges in his petition that his injuries were due to the negligence of the railroad company in failing to cause the water gauge to be inclosed in a screen to prevent particles of glass from being thrown and scattered with great force and violence about the cab, in case it exploded.

This water glass was located in the cab of the engine in plain view of both the engineer and fireman, and it was placed there for the purpose of enabling the engineer and fireman at all times to determine the amount of water in the boiler. The testimony shows that it was not unusual for the water glass used on locomotive engines to break, and that the engineer always carried extra glasses to supply the place of one that might become broken on the trip. The plaintiff testified that it was not unusual for the engineer, when a glass had become somewhat worn by the action of the water, although not broken, to knock it out and replace it with a new one. He also testified, when

asked if he apprehended any danger from the breaking of this glass, that he never thought of it and said he never saw a man hurt, and that he had never been hurt himself prior to the injury complained of. The only negligence charged in the petition is that the defendant failed to inclose the water gauge on this engine with a screen to prevent particles of glass from flying about the cab in case the glass exploded. The evidence shows that the plaintiff in the court below was well acquainted with the water gauge on this engine, and knew its condition, and its liability, in common with all other water gauges, to explode, and that he also knew from his long service with the company that none of its engines were furnished with a protecting screen about the water glass, and was entirely familiar with the manner of construction and use of the same. It further appears from his testimony that he made no complaint of the unsafe character of the water glasses used in the different engines upon which he worked, and that he did not apprehend any danger from that source, although he knew that they did at times explode.

The general rule is that where one enters the employ of another he "assumes the usual risks of the service, and those which are apparent to ordinary observation, and, when he accepts or continues in the service with knowledge of the character of structures from which injury may be apprehended, he also assumes the hazards incident to the situation." Texas Pacific Railway v. Archibald, 170 U. S. 665–673, 18 Sup. Ct. 777, 780, 42 L. Ed. 1188. It is equally well settled that the master is bound to use ordinary care in the matter of furnishing and maintaining reasonably safe machinery. We consider that view to be correct, also, which holds that this duty of the master is so far personal and inalienable that responsibility for damages caused by the negligent discharge of it exists. And just here it is that the plaintiff insists that this rule gives him a cause of action, since his employer failed to use care in providing him with a suitable and safe engine, in this: that the water glass in the engine furnished him was without a proper appliance, namely, a screen over the water glass in the cab of the engine, and that it was this omission that caused the injury for which a recovery is sought.

It was admitted in the pleadings and shown by the evidence at the trial that there was no screen over the water glass on the engine upon which the plaintiff was working and that this was true of all other engines used by the defendant company. It may be conceded too, we think, that it is sufficiently averred in the petition and established by the evidence that this was the proximate cause of the injury here complained of; but, if it be conceded that the want of a screen covering the water glass was the direct cause of the injury, the immediate question is: Do the pleadings and evidence, notwithstanding, set out and establish a cause of action? It will be observed that, in the view we are now considering the case, the complaint is that there was no screen covering the water glass located in the cab. The plaintiff in the court below was an engineer and fireman of large experience, and the defect of the engine in this respect was known to him, or was so plainly observable that he must be presumed to have had knowledge of it. The **evidence shows that it was his duty, as well as the duty of the engi-**

neer, to watch the condition of the water in the boiler. This duty was peculiarly within his department, and, if he voluntarily continued to use the engine without the water glass being screened, we think he must be held to have assumed the risk of so doing, and cannot visit it upon the employer. To this general rule as above stated there are, of course, exceptions, as, for instance, where the servant injured has complained of the dangerous state of the machinery and the master has promised to remedy the defect, or in cases, perhaps, where the servant injured did not know or have reason to apprehend the danger to which the defect of the machinery exposed him. But neither the allegations of the petition nor the proof bring this case within the principle of the exceptions; on the other hand, as we view it, the case falls within the general doctrine that a servant cannot continue to use a machine he knows to be dangerous at the risk of his employer.

The defense of an assumed risk was set up in the answer of the defendant, and was submitted to the court in the request made by it at the trial to instruct the jury to return a verdict in favor of the defendant. In his reply the plaintiff alleged that prior to the time of his injury (the testimony shows about three months) he was advised by the foreman that the water glasses being put into use and then in use on the company's engines were made by a new process and were nonbreakable, and would not burst or explode. This allegation in the reply was attacked by motion to strike it out on the ground that it was a departure from the petition and an attempt to set up a new ground of negligence. This motion was overruled by the court. Whatever view may have been taken of this allegation of the reply in the court below, it is admitted here that it could have no such effect, for, as the plaintiff well states in his brief, no lawyer would seriously contend that a plaintiff may set up by way of reply a new cause of action not pleaded in his petition. He does attempt, however (although admitting that he knew the water glass was unscreened), to give as a reason or excuse why he did not have knowledge that the water glass was likely to burst or explode, and did not voluntarily assume the risk of the glass breaking and injuring him, this allegation in his reply and the proof offered in support of it. But the law does not admit of this excuse. The servant must not go blindly to work where there is danger. He must open his eyes, and take notice of his surroundings. He must see those things that are open to observation, and, if he fails in this respect, the risk is his own.

The record shows that the company had secured, for the purpose of testing, 24 water glasses of a different make from those in common use on the road; that of this number they used 16 or 17; that these new water glasses each bore a tag marked: "Special Glass. This water glass is a special make and being tested. When it breaks, report to master mechanic full particulars." But the evidence is uncontradicted in this case that the water glass in use upon this particular engine on the day plaintiff below was injured was one of the old style with which he was entirely familiar, from which he apprehended no danger and that he paid no attention to it.

The defective condition of the engine upon which the plaintiff was employed (if the failure to enclose the water glass with a screen can

be said to be a defect) was so obvious and the knowledge of the plaintiff, with respect to its defective condition, so necessarily complete, that only one inference could properly be drawn therefrom, and that was, that he assumed the risk of the employment, and upon the evidence this was a question for the court. The request to direct a verdict for the defendant should have been granted.

The case will have to be reversed, with directions to grant a new trial; and it is so ordered.