### KIRKPATRICK et al. v. ST. LOUIS & S. F. R. CO.

(Circuit Court of Appeals, Eighth Circuit. March 17, 1908.)

No. 2,612.

1. MASTER AND SERVANT—INJURY TO SERVANT—ASSUMED RISK.

Plaintiffs' intestate and another were employed by defendant as leadsmen in operating a pile driver mounted on the end of a flat car, their duty being to fasten the end of a rope by means of a hook around the large end of a pile lying beside the railroad track and guide it into its place between the leads as the rope was drawn up over a pulley at their top by an engine, and to fix it in position to be driven. On one occasion, when the hammer was raised alongside of the pile, which had been drawn up, it slipped the rope over the top, and the pile fell and struck and killed plaintiffs' intestate, who was in front of it. The deceased was a young, intelligent, and active man, with all of his faculties, who had worked with the pile driver in the same capacity for several months, and knew of the danger that a pile might fall. The apparatus was the same and was used in the same manner as usual. *Held*, that such danger was one of the risks of the occupation which he assumed.

[Ed. Note—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 574–600.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

2. SAME—CONTRIBUTORY NEGLIGENCE.

Deceased had been warned of the danger that a pile might fall, and had been cautioned to keep watch of it, and not to turn his back to it, and places for the leadsmen to stand had been provided on the car at the sides of the leads, where there was no danger. A pile had actually fallen in a similar manner a few days before. At the time he was killed deceased was not in his proper place, but was walking on the track ahead of the car, with his back toward it. *Held*, that he was guilty of such contributory negligence as precluded a recovery for his death.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 706–709.]

·3. SAME—PLEADING.

In an action against a master to recover for the death of a servant, an allegation in the answer that, if the deceased received the injuries alleged, the same were sustained as a direct result of his own negligence and want of care, and not of the negligence of defendant, is a sufficient pleading of the defense of contributory negligence, after verdict and judgment, where its sufficiency was not attacked by demurrer or motion.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 859.]

In Error to the Circuit Court of the United States for the District of Kansas.

This was an action by the next of kin of Sanford C. Kirkpatrick, instituted in one of the courts of the state of Kansas to recover damages from the defendant railroad company for negligent acts committed in the state of Arkansas which resulted in his death. At the time in question Kirkpatrick was one of the crew engaged in the work of driving piles in the construction of a railroad bridge. The crew was using an apparatus constructed on a flat car, consisting of a small engine in the rear and two upright leads in front, between which operated a hammer of about 3,000 pounds weight. This hammer was drawn up by a rope passing over a pulley at the top of the leads and controlled by the engine. The work to be accomplished was to pick up one by one piles or logs of about 22 feet in length and 18 inches in diameter at the big end, deposited before that time along the railroad right of way, draw them up into a vertical position, make them fast between the leads, move the apparatus forward over the railroad track about 100 feet, and there drive them in the construction of a bridge. The operation of drawing the pile up from the side of the track into position in front of the leads was for one of the crew to draw the slack rope operating over·a pulley at the top of the leads down to the ground beside the track, fasten it about the end of the pile, and then by a reverse action of the engine haul it up to the required position. This was done by two men called "leadsmen." Their post of duty was at the foot of the leads, and their particular service was to guide the piles, when raised by the block and tackle, into position between the leads by the use of canting hooks or other convenient tools, and there to make them fast, ready for the drop of the hammer which was ultimately to drive them into position at the bridge. The crew worked under the general direction of a foreman by the name of Seivert. Kirkpatrick and one Van Zant were the two leadsmen.

The petition specified defendant's negligence to consist (1) in employing the rope with a hook at its end, instead of a chain and a hook at the end of the rope, to make the hitch about the end of a pile; (2) in causing the hammer to be raised to the top of the leads and the apparatus to be moved while a pile was hanging by the rope in front of the leads, thereby permitting the hammer, while rising, to rub against the rope encircling the pile and stripping it off over the end of the pile, so as to leave it without support and permit it to fall; (3) in not notching the pile where the rope encircled it, so as to permit the rope to sink into the body of the pile, and thereby prevent the hammer rubbing against it as it arose; (4) in not rolling or canting the pile to one side while the hammer was being raised, thereby preventing it

from striking the rope as it passed up; (5) in not raising the hammer to the top of the leads before placing the pile between the leads, thereby to prevent collision between the encircling rope and the hammer as it was raised. As a result of these acts of negligence plaintiffs charge that a pile fell and killed Kirkpatrick while he was on the track in front of the advancing pile driver. The defendant denied the negligence charged, and pleaded assumption of risk and contributory negligence by the decedent. The case was tried to a jury, resulted in a verdict in favor of the defendant by direction of the court at the close of plaintiffs' case, and is now here on writ of error for review of the proceedings below.

W. P. Campbell (Kos Harris, Verne Harris, A. M. Sturdevant, and Lafe Sturdevant, on the brief), for plaintiffs in error.

H. C. Sluss and W. J. Orr (L. F. Parker and W. F. Evans, on the brief), for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge (after stating the case as above). An act in force in Arkansas, where the casualty in question occurred, subjected the company to liability for the negligent acts of any of its employés resulting in injury or death to another employé. Thereby the fellow servant doctrine, which might otherwise have been applicable to some phases of this case, is rendered inapplicable. Sand. & H. Dig. § 6248. For the purposes of this case, therefore, the acts of the foreman, if negligent, are imputable to the defendant itself. He was a vice principal.

In view of the proof it is doubtful if any negligence can be imputed to the defendant in either of the particulars specified in the petition. The evidence tends to show that the device employed was the one generally employed by others engaged in the same business, the method of operating it was one generally practiced by others, and that there was nothing unusual or uncustomary in the hitch of the pile, the elevation or operation of the hammer, or the movement of the apparatus; but, as the court is not unanimous in its opinion on this primary issue, we will not dwell upon it, but proceed to some other and decisive issues upon which we are in full accord.

The decedent, as alleged by plaintiffs and in substance proved by the evidence, was 27 years old, strong and able-bodied, skillful, industrious, and temperate, of a good degree of intelligence, and with unimpaired senses of sight and hearing. He had worked for defendant in the performance of the same duties for 14 months before his death. The process of drawing up the pile, raising the hammer, and moving the machine forward was the same on the occasion in question as it had been during the 14 months of his past service. The heavy hammer had habitually been left at the bottom of the leads until the pile had been raised and action upon it had become necessary, in order to prevent an obvious overweighting of the top and probable upsetting of the machine. The rope and hook had been used interchangeably with the chain and hook for making the hitch, and during the last three weeks prior to the accident it had been used exclusively. The logs had never been notched for sinking the encircling rope or chain. The hammer had generally been drawn up after the piles had been elevated, and at a time when the rope or chain was liable to be stripped

off by its ascent. Decedent had worked about this machine for a long time. He sharpened the end of the piles as they lay on the right of way for a while, but most of the time he was a leadsman. His post of duty and his duties brought him into immediate view of and contact with the operation of the machine. His post was on a footboard provided especially for leadsmen at the bottom of the leads and in front of the machine. His duties and those of his fellow leadsman were to handle the piles, take the end of the rope or chain suspended laxly from the pulley at the top of the leads out to the pile beside the track, hitch it to the big end of the pile, watch and guard the latter from contact with obstacles on its way up, ultimately place it between the leads, put the toggles or supports in place, and make everything ready for final action.

The proof given by plaintiffs' own witnesses unmistakably shows that decedent was familiar with all the details of construction and operation of this machine. He usually made the hitch himself, and attended to raising 40 or 50 piles a day. He knew that the rope or chain might be stripped off the pile by the hammer as it was drawn up, and that the pile might fall as a consequence thereof. Of this he had been frequently warned, and within the last 10 or 15 days had witnessed an instance of the falling of such a pile from the leads. If the risks and dangers which caused his death were the usual and ordinary risks and dangers of the employment, he assumed them, provided they were known to and appreciated by him. St. Louis Cordage Co. v. Miller, 126 Fed. 495, 511, 61 C. C. A. 477, and cases cited. If, on the other hand, they were not the usual and ordinary risks and dangers, but arose from negligent defects in appliances, or a negligent method of operating them required by the master, then he assumed all risks and dangers arising from such defects and such operation, if they were known to him, or if they were plainly observable by him. Texas & Pacific Railway v. Archibald, 170 U. S. 665, 673, 18 Sup. Ct. 777, 42 L. Ed. 1188; Choctaw, Oklahoma, etc., R. R. v. McDade, 191 U. S. 64, 68, 24 Sup. Ct. 24, 48 L. Ed. 96; Texas & Pacific Ry. Co. v. Swearingen, 196 U. S. 51, 62, 25 Sup. Ct. 164, 49 L. Ed. 382; Musser-Sauntry Land, Logging & Mfg. Co. v. Brown, 126 Fed. 141, 144, 61 C. C. A. 207; Chicago, Burlington & Quincy Railway Co. v. Griffin (C. C. A.) 157 Fed. 912; Chicago, Milwaukee & St. Paul Ry. Co. v. Donovan (C. C. A.) 160 Fed. 826, just decided by this court; Mexican Cent. Ry. Co. v. Murray, 102 Fed. 264, 272, 42 C. C. A. 334; Volk v. Sturtevant Co., 104 Fed. 276, 277, 43 C. C. A. 527; Lindsay v. New York, N. H. & H. R. Co., 112 Fed. 384, 385, 50 C. C. A. 298. The decedent was killed as a result of risks and dangers of one kind or the other just mentioned. Of this, under the proof, there can be, and is, in our opinion, no doubt; and under the rule just mentioned in one or the other of its aspects there can be no escape from the conclusion that decedent, with all his knowledge of the details of the machinery and of their operation, voluntarily assumed the risk and danger which caused his death.

But it is contended that there is no proof that the decedent knew or appreciated the danger incident to the operation of the machine

in question. In King v. Morgan, 109 Fed. 446, 448, 48 C. C. A. 507, we took occasion to say that:

"An intelligent man, with full knowledge of the character and quality of the implement furnished him for use, and of all the facts and physical laws which render its use dangerous, after having voluntarily accepted employment in a hazardous business involving the use of such implements, will not be heard to say he did not know it was dangerous."

This is a rational rule, and one which, when properly applied, produces no unjust results. It has been recognized and applied in the following subsequent cases: Moon-Anchor Consol. Gold Mines v. Hopkins, 111 Fed. 298, 305, 49 C. C. A. 347; Johnson v. Southern Pac. Co., 117 Fed. 462, 54 C. C. A. 508; St. Louis Cordage Co. v. Miller, 126 Fed. 495, 513, 61 C. C. A. 477; Tower Lumber Co. v. Brandvold, 141 Fed. 919, 922, 73 C. C. A. 153. The decedent was an intelligent man in the prime of life, with his senses unimpaired, and it would be an unwarrantable and impossible inference to indulge that he, with his extensive experience and familiarity with the machine in question and its operation, did not know or appreciate the danger involved in its use.

We are also unanimously of opinion that the decedent was guilty of such contributory negligence as precludes recovery in this case by his next of kin. The facts, which have already been sufficiently detailed, disclose that a pile was liable to drop at any time; that one actually fell ten days or two weeks before the accident in question. The proof shows that one could fall only in front of the machine carrying it. The foreman in charge of the work for the defendant company had shortly before the accident in question warned the decedent and all the men working with him to look out while raising piles, and not to turn their backs to it. On account of the danger thus warned against, a place of absolute safety had been provided for the leadsmen while discharging their duty, and while the machine was being propelled to the bridge with its hanging and threatening load. On the occasion in question decedent was not at his post of duty when the pile was drawn up in front of the leads. He appears to have been out in front of the machine on the track near the bridge. His partner, Van Zant, alone remained at his post on actual duty. He had given attention to drawing up the pile which caused the accident in question. Decedent observed that the upper end of the rising pile came in contact with a projecting part of the machine, and started back toward the machine, probably to aid his partner in releasing it; but the difficulty was soon over, and decedent turned about and started to walk towards the bridge, with his back to the pile then dangling in front of the leads; and did this without looking back or otherwise heeding the peril behind him, or the warning against so doing recently given by the foreman. When about 20 feet in front of the machine the pile fell, hit, and instantly killed him. He not only paid no heed to the threatening peril and ignored the warning of his foreman, but left a place of safety, where his duty required him to be, and needlessly and voluntarily exposed himself to the danger which directly and without the intervention of any other adequate cause produced his death. These facts, which are established beyond question, amount

to contributory negligence which is fatal to plaintiffs' recovery. Gilbert v. Burlington, etc., Ry. Co., 128 Fed. 529, 63 C. C. A. 27; Crookston Lumber Co. v. Boutin, 149 Fed. 680, 79 C. C. A. 368.

The defense of contributory negligence is sought to be avoided because it was not sufficiently pleaded by defendant. The answer alleges that:

"If Sanford C. Kirkpatrick sustained the injuries alleged in the petition, the same were sustained as a direct result of negligence and want of care of the said Kirkpatrick, and not as the result of the want of care on the part of the defendant."

It is contended that these averments are not specific enough; that defendant should have specified the particular acts of negligence constituting the want of care on the part of the decedent. Without admitting that the answer was at all insufficient, it is enough for our present purpose to say that no objection was taken to it below, either by special demurrer or appropriate motion. After verdict, judgment, and appeal it is quite too late to make such formal objections. If the defects existed, they were cured.

There was some evidence that Kirkpatrick and Van Zant, the two leadsmen, had adopted a practice by which one of them sometimes remained about the bridge after driving a pile, without returning to help pick up and bring forward the next one, and that this practice was known to and tolerated by the foreman. The evidence on this subject is not clear; but, conceding to it all that is claimed by plaintiffs' counsel, it plainly does not affect the defense of assumption of risk. Neither, in our opinion, does it palliate or excuse the contributory negligence of the decedent. If the foreman had known of the arrangement between the two leadsmen, which seems to amount to something like a labor-saving compact, and if he had assented to one of them occasionally remaining at the bridge for a trip, it does not appear how that fact would justify Kirkpatrick in getting near to the dangling pile and in heedlessly ignoring its threatening danger. No positive direction of the foreman, if that were shown, to Kirkpatrick to do so, would have justified the reckless action involved in doing it. Railroad Co. v. Jones, 95 U. S. 439, 24 L. Ed. 506; Tower Lumber Co. v. Brandvold, supra, and cases cited. Certainly, then, no passive toleration justified it.

Certain expert witnesses were called by plaintiffs, and their opinions asked concerning proper appliances to prevent the hammer from striking the rope or chain in its ascent. They were also asked as to the advisability of notching the end of the piles before making the hitch around them, and as to the propriety and safety of raising the hammer while the pile was hanging in front of the leads, and other like questions. These questions were excluded by the court upon the objection of defendant's counsel. The action of the court in so doing is assigned for error. We have for the purposes of this opinion assumed, without admitting it, that defendant was guilty of negligence in the particulars charged in the complaint, and have disposed of the case on other grounds. If the rejected testimony had been admitted, it could not have accomplished more than we have assumed to be true.

For that reason we find no occasion to consider the assignment of error just mentioned.

The verdict as ordered by the court was for the right party, and judgment rendered thereon must be affirmed. It is so ordered.