### THE MIAMI.

(District Court, E. D. New York. May 2, 1898.)

1. INJURY TO SEAMAN—NEGLIGENCE.

In attempting to lower the topmast of a vessel, the boatswain wrapped the chain five times around the drum, and climed the foremast to remove the fid holding the topmast, the end of the chain being held by two seamen. The mate of the vessel took the chain from the seamen, and removed one wrap from the drum, and then released the chain before the seamen had secured firm hold again. The mast fell and injured the boatswain. *Held*, that the mate was negligent.

2. MASTER AND SERVANT—FELLOW SERVANTS.

Where a boatswain is engaged, with a detail of seamen, in lowering a mast, and the mate of the ship participates, and, in assisting to do the work, causes the injury of the boatswain by his negligence, the act of the mate is that of an operative, and the boatswain cannot recover.[1]

---

[1] For a full collection of the cases on the question as to "Who are Fellow Servants," see note to Railroad Co. v. Smith, 8 C. C. A. 668, and supplementary note to Railway Co. v. Johnston, 9 C. C. A. 596.

Libel by Thomas Ashton against the steamship Miami, James Lewis, claimant, to recover damages for personal injuries.

Cowen, Wing, Putnam & Burlingham, for libelant.

Convers & Kirlin, for claimant.

THOMAS, District Judge. Thomas Ashton, the libelant, an experienced seaman, was boatswain on the steamship Miami, on her passage from Hamburg to Baltimore. On January 19, 1897, the libelant, having been ordered so to do by the first mate, undertook, with the aid of three seamen, to lower the fore topmast into the hollow foremast. The topmast when raised is held in position by an iron fid or bar, which passes through the foremast and also the lower end of the topmast. A chain is fastened by its upper end to an iron shackle. This shackle has eyes at its two ends, through which a bolt passes, fastening it firmly to a staple riveted to the foremast. The chain is from the shackle carried under the lower end of the topmast; thence upward over a pulley on the foremast; thence downward, and wound several times around a drum, connected with a winch on the deck; and the free end of the chain extends on the deck, where it is intended to be handled in the manner following: When it is desired to lower the topmast, the winch is set in operation and the topmast slowly raised, so as to relieve the fid from its weight, and the fid is then withdrawn. Thereupon the weight of the topmast rests upon the chain alone, and this weight would cause the chain to unwind from the drum, unless prevented by some counteracting force applied to the chain. For this purpose the free end of the chain is held by two or more seamen delegated for that purpose. On the occasion in question the libelant wound the chain five times around the drum, as he says (the mate says six times), and then took his position on the cap of the mast and assisted in the removal of the fid, the topmast being slightly raised to allow this removal to be effected. After the removal of the fid the topmast rested on the chain alone, which was prevented from unwinding by the force applied by two seamen holding the free end on the deck. The seamen slightly relaxed the chain, to allow the topmast to descend, which, however, it did not do at once. The first mate, seeing that the topmast did not readily descend, stated that there were too many turns of the chain around the drum to permit the chain to render or pay out. Thereupon he took the chain from the hands of the seamen, unwound one turn thereof from the drum, meanwhile preventing the chain from rendering by pressing down on the chain on the drum with his hand. He then undertook to leave the chain and the holding thereof to the seamen, while he himself stepped aside. The seamen at this time had no hold, or no sufficient hold, of the chain, to prevent it from running or slipping around the drum too rapidly. The result was that the seamen could not hold the chain, and it rendered so rapidly that they finally abandoned it, whereupon the topmast fell with great rapidity. The ropes, stays, and other rigging fell swiftly and violently upon the boatswain, who was still on the mast, hurling him upon the deck, and injuring him to a very serious extent.

It is claimed on the part of the libelant that the removal of one loop from the drum was a contributing cause of the accident, as it made it impossible for the seaman to restrain the too rapid rendering of the chain.

It will be noticed that, after the chief officer had taken off one loop, but four remained on the drum, although the claimant's evidence tends to show that five turns of the chain remained.

The claimant offers evidence of experiments with the same apparatus, thereafter made while the ship was in port, tending to show that four rounds on the drum would be sufficient to enable two men to safely lower the mast. This is entirely credible. However, when the ship is at rest, and effort is being made for the very purpose of ascertaining to what extent the aid of the drum in lowering the mast is absolutely necessary, probably the experiment would be attended with greater success than if undertaken in the usual course of business, on a cold day in winter, and with the ocean disturbed. All the conditions of an experiment in port are favorable. Those attempting it are alert and forewarned of the precise danger. However, the experiments and evidence illustrate that, if the mate left but four rounds on the drum, he left enough to make a safe descent of the topmast possible, if not probable. But to render safe such descent, under such circumstances, very great care in surging and paying out the chain would be required. It seems that care sufficient in law was not exercised on the occasion in question. But the fault cannot be attributed to the seamen; at least, not to them alone. There was a fault in putting the seamen again in proper possession of the chain after the mate had taken it from them and taken possession of it for the purpose of taking off a loop. Before the mate stepped aside and released his hold upon the chain he should have seen to it that the seamen had regained their full possession of the chain, and were in proper attitude and at a proper advantage to meet and check the sudden rendering of the chain that would result from the mate's discontinuing his pressure of the chain down upon the drum and from the removal of the loop from the drum. To this point the holding must be this: That, in removing one and leaving but four rounds on the drum, the mate had reached the extreme limit of prudent operation; and that even this condition was not prudent, unless the men whose duty it was to hold the chain were in full possession thereof, and using great care to pay out the chain very gradually; that the mate disconnected himself from the chain, and left its operation to the seamen, without sufficient care to discover whether they were in the necessary repossession of the chain. Therefore the mate was negligent, and the claimant is liable for the injury, even though the seamen were also negligent, providing the act undertaken and done negligently by the mate was the act of the master, and not the act of an operative.

Under the decisions of the federal courts and of the courts of New York, the act of the mate must be regarded as the act of an operative, and it must be held that the mate was not attempting to execute a duty owing from the master to the seamen. The simple question is whether the mate was, in taking the loop from the drum, and for that

purpose temporarily withdrawing the chain from the custody and control of the seamen, performing an act that it was the primary duty of the master to do, or whether the act was a part of the routine work pertaining to the operation of the ship. It is not important that the offending person was the mate, and the injured person was the boatswain. The boatswain had immediate charge of the work and the three sailors detailed to do it, and, in connection with such charge, was lending manual aid. The mate was superintending the work from a somewhat higher post of command, and he also chose to participate in the actual work, to the extent above described. But the superintendence of both mate and boatswain was quite as much a matter of operation as the manual work that both undertook to do; or, if it were otherwise, the accident was caused by the mate undertaking an operative's work. Under such a state of facts, the libelant may not recover. Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914; Railroad Co. v. Keegan, 160 U. S. 259, 16 Sup. Ct. 269; Railroad Co. v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843; Railroad Co. v. Charless, 162 U. S. 359, 16 Sup. Ct. 848; Mining Co. v. Whelan, 168 U. S. 86, 18 Sup. Ct. 40; Crispin v. Babbitt, 81 N. Y. 522.

After the accident it was discovered that the shackle was broken, and it is alleged that this shows negligence on the part of the employer in furnishing a defective appliance. There is no sufficient evidence that the shackle broke and caused the accident. The evidence more convincingly shows that the broken shackle resulted from the accident. The libelant invokes the doctrine of res ipsa loquitur, but the rule is not here applicable.

The facts of the case are reasonably clear, the libelant's injuries undoubted, and stated with an honesty that is worthy of mention; but the law is clearly adverse to his recovery, and the libel must be dismissed.