### WESTINGHOUSE, CHURCH, KERR & CO. v. CALLAGHAN.

(Circuit Court of Appeals, Eighth Circuit. July 10, 1907.)

No. 2,547.

1. MASTER AND SERVANT—NEGLIGENCE OF FELLOW SERVANTS.

One who enters the employment of another thereby assumes the risk of the negligence of his fellow servants in the performance of all acts which they do while they are not discharging a positive duty of the master.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 567.]

2. SAME—DUTY OF CARE FOR SAFETY OF PLACE AND OF APPLIANCES WHERE CHARACTER NECESSARILY CHANGES WITH WORK, SERVANT'S NOT MASTER'S.

The duty of caring for the safety of a place or of appliances in cases in which the work which the servants are employed to do necessarily changes the character of the place or of the appliances as to safety as the work progresses is the duty of the servants to whom the work is intrusted, and it is not the duty of the master.

3. SAME—VICE PRINCIPAL—FELLOW SERVANTS.

All who enter the employment of a common master to accomplish a common undertaking are prima facie fellow servants, although their grades of service are different, and some direct and supervise the men subject to their command and their work, while others perform the labor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 451, 452.

Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Flippen v. Kimball, 31 C. C. A. 286.]

4. SAME—RISK OF SUPERVISION BY FELLOW SERVANT ASSUMED.

The servant assumes the risk of the negligence of his superior fellow servant in the direction of the men and the work to the same extent that he assumes the risk of the negligence of the fellow laborer by his side who is engaged in performing the work.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 567, 570.]

5. SAME—VICE PRINCIPAL—DEPARTMENTS OF BUSINESS.

The homogeneous business of a master cannot be divided into distinct and separate departments under the rule in Railroad Co. v. Baugh, 13 Sup. Ct. 914, 149 U. S. 368, 383, 37 L. Ed. 772, by the testimony to that

effect of his servants, and such testimony is incompetent for this purpose. The nature of the business alone can separate it into departments.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 475–479.]

6. SAME—VICE PRINCIPAL—FACTS—CONCLUSION.

The plaintiff and D. were employed by the defendant in dismantling heavy machinery in the World's Fair buildings. D. was foreman under a superintendent who was under a manager there. The day before the accident a heavy wooden frame 25 feet high had been erected and temporarily fastened in place with guy ropes under. the direction of D. to be used to lift and move the heavy parts of an engine. On the day of the accident the plaintiff and four other men were working under D. to permanently secure this frame in place. D. directed the plaintiff to go upon the frame, and, after he had climbed there for the purpose of moving one of the ropes which held this frame in place so that they could use it at another place as a permanent guy rope, D. untied it below, and the frame fell and injured the plaintiff.

Held, D. was not a vice principal, but he was a fellow servant of the plaintiff, and the defendant was not liable for his negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 451, 452.]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

Percy Werner, for plaintiff in error.

James J. O'Donohoe, for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge. Westinghouse, Church, Kerr & Co., a corporation, was engaged in dismantling heavy machinery in the World's Fair buildings at St. Louis. Caldwell was its manager and Oldham its superintendent there. According to the most favorable evidence in the record for the plaintiff below, Callaghan, he had worked for this corporation during the Fair, had left his employment for some time, and about the 1st of December, 1904, he returned and applied to Caldwell for his old job. Caldwell referred him to Oldham, ·the superintendent who employed him. He then labored there three weeks with a gang of men in the power house taking down props, and Douglas worked in the machinery hall with another gang. Douglas was the foreman, and ordered the work to start promptly and gave the plaintiff his orders. On December 24, 1904, Oldham asked the plaintiff if he would work upon Christmas Day, and ·offered him time and a half. He accepted the offer, and reported to Oldham that he was ready to work. Douglas on the night before Christmas ordered him to work and to be out early. On Christmas Day Callaghan, Douglas, Stanley, Dorig, and two other men who had agreed to work on that day appeared and Douglas ordered them to put permanent guy ropes on a heavy wooden frame which had been erected the day before under his direction for the purpose of lifting and removing the heavy materials of which the engines were composed. This frame consisted of four upright pieces of timber 8 by 8, 25 feet long. Upon the east and west sides heavy timbers 14 feet long had been mortised into the up-

rights, and there were timbers lying across these from north to south. This frame was temporarily held in position by guy ropes. In order to substitute permanent guy lines for the temporary ones, Douglas, who was a rigger and the foreman of this gang, directed one of the men to get some ropes, and ordered the plaintiff to go upon the northwest corner of the frame. After he and Stanley had climbed upon this frame Douglas directed the latter to untie a certain temporary guy rope, so that it might be moved to the corner of the structure, and there used for a permanent line, but Stanley was unable to loosen it. Thereupon Douglas untied it below where he was at work, and the frame immediately fell and injured the plaintiff. One of the laborers testified that he worked in the boiler room department, and that this was 20 or 30 yards from the department in which the engines were being dismantled. Another testified that the power house and machinery hall were different departments, which were all run by the same foreman, and that he worked in the department for dismantling engines under Douglas. Douglas was paid higher wages than the other employés. He directed them what to do and where to work, and also engaged in manual labor with them.

At the close of the evidence, the defendant requested the court to instruct the jury to return a verdict in its favor, on the ground that the negligence which caused the injury was that of the plaintiff's fellow servant, Douglas, and not that of the defendant; but the court denied the request, and this ruling is assigned as error. The testimony of the servants that the work of dismantling the machinery in which they were employed by the defendant was in different departments, that one of these was the dismantling of the machinery in the power house and another the dismantling of the machinery in machinery hall, was futile and immaterial. Its evident purpose was to endeavor to bring the case under the rule in Railroad Co. v. Baugh, 149 U. S. 368, 383, 13 Sup. Ct. 914, 920, 37 L. Ed. 772, to the effect that the superintendent of a separate department of a vast and diversified business may be a vice principal. "But," said the court in that case, "this rule can only be fairly applied when the different branches or departments of service are in and of themselves separate and distinct." But the dismantling of the machinery in the buildings at the World's Fair was single and homogeneous, and the testimony of those employed in it was both incompetent and insufficient to divide it into distinct departments. The character of the business and that alone separates it into distinct departments and it cannot be so divided by the testimony of those who are employed to carry it on.

The frame which fell was constructed under the direction of Douglas. He directed Callaghan to station himself upon it and he untied the guy rope which permitted it to fall. Callaghan assumed the risk of the negligence of his fellow servants, and, if Douglas is conclusively shown by this evidence to have been the fellow servant of the plaintiff, the latter was not entitled to recover here, and the court should have instructed the jury to return a verdict for the defendant. "Prima facie all who enter into the employ of a single master are engaged in a common service, and are fellow servants and some other line of demarcation than that of control must exist to de-

stroy the relation of fellow servants." Railroad Co. v. Baugh, 149 U. S. 368, 384, 13 Sup. Ct. 914, 920, 37 L. Ed. 772. The servant assumes the risk of the negligence of his superior fellow servant in the latter's direction of the men and of the work to the same extent that he assumes the risk of the negligence of the fellow laborer by his side who is engaged in performing the work. American Bridge Co. v. Seeds, 75 C. C. A. 407, 410, 144 Fed. 605, 608, and cases there cited.

The duty of the master to exercise ordinary care to make and keep reasonably safe the place in which, and the machinery and appliances with which, his servants are at work, does not extend to cases in which the work which the servants are employed to do necessarily changes the character of the place or of the appliances as to safety as the work progresses. But the duty of care for the safety of the place and of the machinery and appliances in such cases devolves upon the servants to whom the work is intrusted. American Bridge Co. v. Seeds, 75 C. C. A. 407, 415, 144 Fed. 605, 613, and cases there cited. If the negligent act of the servant which causes the injury is done in the discharge of a positive duty of the master, then the negligence therein is the negligence of the master. If it is done in the discharge of any other duty of the employé, it is the negligence of the servant, the risk of which his fellows have assumed. Weeks v. Scharer, 111 Fed. 330, 335, 49 C. C. A. 372, 377.

In Coal Co. v. Johnson, 6 C. C. A. 148, 56 Fed. 810, a foreman of a gang of 10 or 12 men worked in a mine under a pit boss, who worked under a superintendent. While one of this foreman's gang was digging a hole in the floor of a room in the mine by his direction to set a drilling machine, the foreman struck the roof above him with a pick to make a hole there for the same machine, and thereby brought down upon the plaintiff a mass of stones and earth, which seriously injured him. The foreman had authority to direct the men in his gang when and where to work and what to do. It was his duty to prop the roofs of the rooms with timber, to sound and inspect them so that they would be reasonably safe, to drill holes in their faces, charge them with powder, and fire it at the proper times to bring down the coal. This court held that the foreman was not a vice principal, but a fellow servant of the workmen. In Minneapolis v. Lundin, 7 C. C. A. 344, 58 Fed. 525, the city engineer was the general superintendent of all the work of the city. He appointed a superintendent of sewer construction. The latter employed a foreman who superintended and directed the work of a crew of about 50 men. This foreman was empowered to hire and discharge men, and to direct them when, where, and how to work. He ordered one of his gang to reload a hole which had been drilled in a rock, and had been filled with dynamite which had failed to explode, but he did not inform the workman that dynamite remained in the hole. The workman, in ignorance of the presence of the dynamite, proceeded to drill out the hole, the dynamite exploded, and he was injured; but the foreman was held to be his fellow servant. To the same effect are Kansas & A. V. Ry. Co. v. Waters, 16 C. C. A. 609, 70 Fed. 28, and The Miami (D. C.) 87 Fed. 757.

The principles and authorities to which reference has been made leave no alternative in the case in hand. The plaintiff and Douglas were engaged in the same work, the work of dismantling heavy machinery, and at the moment of the accident in securing in place for this purpose, a frame which had just been erected and which was held in place by temporary guy ropes, a work which necessarily continually changed the character of the place where, and the appliances with which they were working, as to safety. It was the duty of these servants, of Douglas and Callaghan, and not the duty of the master, to care for the safety of this place in so far as that safety was conditioned by the frame which they were securing in place and their manipulation of it. Douglas was not a vice principal of the master, because he was neither a general manager nor a superintendent of the entire undertaking or of any distinct department of a vast and diversified business. He was not a vice principal because the performance of the specific act which caused the injury was not a part of the positive duty of the master, but one of the duties of the servant. In the performance of this act and of all his acts in relation to this frame the evidence is conclusive that he was discharging no positive duty of his master, but the ordinary duty of a servant. He was, therefore, in the performance of these acts a fellow servant of the plaintiff and the defendant was not liable.

The judgment below must accordingly be reversed, and the case must be remanded to the Circuit Court, with directions to grant a new trial; and it is so ordered.