### WESTERN INV. CO. v. McFARLAND.

(Circuit Court of Appeals, Eighth Circuit. December 3, 1908.)

No. 2,807.

1. MASTER AND SERVANT (§ 286*)—DEATH OF SERVANT—MINERS—NEGLIGENCE—QUESTION FOR JURY.

In an action for death of a miner by the fall of loose rock from a hanging wall of the stope, evidence *held* to require submission to the jury of the question of defendant's failure to properly timber and protect the wall.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 286.*]

2. MASTER AND SERVANT (§ 278*)—DEATH OF SERVANT—CAUSE OF ACCIDENT.

In an action for the death of a miner, the admission in defendant's answer that decedent was killed by rock falling from a hanging wall, in connection with proof that knowledge of the defective condition of the wall had been previously given to defendant's superintendent and that he had failed to protect the wall, was sufficient to show that decedent's death was caused by defendant's failure to exercise reasonable care to furnish a reasonably safe place for decedent to work in, and that the cause of the accident was neither uncertain nor conjectural.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 278.*]

3. MASTER AND SERVANT (§ 235*)—DEATH OF SERVANT—UNSAFE PLACE—CHANGING PLACE.

Where decedent was employed as a laborer in a mine to shovel muck at a designated place, without admonition that his action might occasion any dangerous consequences, and he was put to work 400 feet below the surface, with no provision of men, timber, or tools with which to make a repair if one became necessary, he was not employed to do work which necessarily changed the character of the place for safety, nor did he assume any obligation to keep the place in repair.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 711, 714; Dec. Dig. § 235.*]

4. MASTER AND SERVANT (§ 125*)—DEATH OF SERVANT—LATENT DEFECT.

Where defendant knew or should have known of the defective or dangerous condition of the hanging wall of a mine by which decedent was killed, and had reason to believe that it might fall as the result of removal of accumulated muck, a contention that decedent was killed as the result of a latent defect was unsustainable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 243–251; Dec. Dig. § 125.*]

5. MASTER AND SERVANT (§ 288*)—DEATH OF SERVANT—ASSUMED RISK.

Decedent was killed while working in the stope of a mine by the fall of a portion of the hanging wall. He had never worked in the stope before

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

having been taken by the night foreman to the top of a muck pile and directed to shovel down the muck into a chute as fast as the trammer required it. He was given no warning nor intimation that the walls were not safe, or that the customary precautions after the drawing of the muck had not been taken, and a little later was found covered with rock at about the place where he was set to work. He was furnished with only one candle to light the long, narrow, dark chamber, and the cracks and crevices in the wall were obscured by accumulated dirt. *Held*, that decedent did not assume the risk of such injury as a matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

**6.** MASTER AND SERVANT (§ 289*)—DEATH OF SERVANT—CONTRIBUTORY NEGLIGENCE.

Where a miner was killed by the fall of material from an insufficiently protected wall of the mine, which was not sufficiently lighted, shortly after he began to work in the stope in which he was killed, and the defects in the wall were obscured both by darkness and accumulated dirt, decedent was not negligent as a matter of law.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 289.*]

**7.** APPEAL AND ERROR (§ 263*)—REVIEW—INSTRUCTIONS—EXCEPTIONS.

Instructions given cannot be reviewed where no exceptions are taken to the portions of the charge criticised.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1516; Dec. Dig. § 263.*]

**8.** TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL OF REQUESTS.

It is not error to refuse réquests to charge substantially covered by the main charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 651; Dec. Dig. § 260.*]

In Error to the Circuit Court of the United States for the District of Colorado.

Julian G. Dickinson, for plaintiff in error.

J. E. Ferguson and Charles C. Butler, for defendant in error.

Before HOOK and ADAMS, Circuit Judges, and PHILIPS, District Judge.

ADAMS, Circuit Judge. This was an action for damages alleged to have been occasioned by negligence of the defendant, the Western Investment Company, which resulted in the death of its employé, plaintiff's husband, Samuel McFarland. The negligence charged was, generally speaking, failure to use proper care in providing a reasonably safe place for decedent to work in. The defense consisted of a denial of the alleged negligence, contributory negligence, and assumption of risk by the decedent. There was a verdict and judgment for plaintiff, and defendant prosecutes error.

The complaint charged, in substance, that the decedent was put to work by defendant's superintendent in a stope of its mine to shovel ore accumulated there into chutes extending through the lagging or floor of the stope to tram cars below; that the place was dangerous by reason of loose rock on the hanging wall of the stope liable to fall at any time; that this condition of things was unknown to and unobservable by the decedent, but known to or ought to have been known

by the defendant; that while decedent was so at work, and without fault on his part, a rock fell from the hanging wall and killed him.

Defendant for answer denied generally plaintiff's statement of facts, but admitted that decedent "was employed by the defendant to work . in said stope, and that while working in said stope a rock became detached from the hanging wall of said stope and fell down, striking said Samuel McFarland," by reason whereof he died.

Defendant's main contention, that the trial court erred in not instructing a verdict in its favor, is urged before us for the following reasons: (1) That there was no evidence of negligence as charged in the complaint; (2) that the place where decedent was put to work was constantly changing as respects safety by the work done by him; (3) that the cause of the falling of the rock was not proved, but left uncertain and conjectural; (4) that if the rock was loose in the hanging wall it was a latent defect which could not have been discovered by defendant by the exercise of reasonable care; (5) that decedent by going to work in the stope assumed the risk of the injury which befell him.

The first and third reasons, that the proof failed to establish the alleged negligence, but left the cause of the falling of the rock doubtful and conjectural, being really one, will be considered together and first disposed of.

The stope in which decedent was put to work was what is known as a "filled stope"; that is, the ore had been shot or broken down by the machinemen from the back or top of the stope, and had filled the space below from the lagging or floor upwards, leaving space only sufficient for the machinemen to stand while breaking down the ore. This accumulation of ore, or "muck" as it is called in mining parlance, had so filled the space worked out in the process of stoping upwards between the hanging and foot walls of the vein as to afford an effective brace or protection against loose rock in the hanging wall as long as it was permitted to remain there intact. The mining operations—that is, the machine work—had ceased some considerable time before the events involved in this suit, and muck from 10 to 15 feet deep had accumulated at or near the place where the decedent was subsequently killed. The southern part of the stope, with which alone we are concerned, had three narrow chutes cut through the lagging or flooring of the stope to guide the ore into tram cars beneath. These chutes were located some 19 feet apart, and were about 3½ feet wide, extending the width of the stope 5 or 6 feet in length, and were employed for drawing off the accumulated muck so as to load it and tram it to the shaft. Two of these chutes had been opened, and such of the muck immediately above the openings as would fall by gravity had been drawn off and trammed away before decedent went to work there. This operation left two practically vertical walls of muck extending up on each side of the chute to the top of the pile, and, as no more muck would drop by gravity into the chute when opened, it became necessary to shovel it into the chute from the top of the pile when required for tramming. The decedent was put to work on the top of one of these piles to do this shoveling, and had worked a little over an hour when the rock fell which killed him.

Is there any substantial evidence tending to show that the rock fell as a result of defendant's negligence? If so, the case was properly submitted to the jury, and its verdict is conclusive of that fact. The usual way of guarding against the falling of rock in mining stopes is to brace the walls against each other by timbers or stulls as the stope progresses upwards. But in operating filled stopes the muck takes the place of stulls, and usually affords sufficient protection as long as none of it is drawn off; but when drawn off, the walls, being left without support, manifestly require timber or other protection if there be any loose or threatening rock in the walls.

Evidence introduced by defendant tends to show that as the stope was drawn off, or at any other time, no dangerous or loose rock was or could be discovered, and that every precaution was taken to protect the hanging wall against falling. But a careful reading of all the evidence satisfies us that there was substantial evidence to the contrary. Mr. Thompson, the defendant's superintendent, testified that the only safe way to draw off a filled stope was to have timbermen following right down watching for loose rock on the wall and prepared to put in a timber when required to make it safe. Witness Carr, one of defendant's timbermen, testified that judging from his observation of the wall while the stope was being filled, and from his experience in timbering, which had been large, he believed that when the stope should be drawn it would probably need some timber to support the walls. He also testified that a month or more before McFarland was killed he discovered a talc slip or seam three-fourths of an inch wide in the hanging wall at this part of the stope, and that he called the superintendent's attention to it and told him it did not look good, and that the superintendent said: "Well, that is all right now. We will fix it when we begin to draw the stope." Bailey, a machineman, testified that while he was working in the stope he discovered mud seams on the hanging wall and called the superintendent's attention to it, saying the ground was pretty bad there, and that the superintendent responded that he would quit it pretty soon; that the ore was playing out.

The evidence tends to show that no timbering was done in the stope for some time before the fatal accident; that in the meantime the muck over two chutes extending from the top of the pile to the floor of the stope, a distance variously estimated from 10 to 15 feet or more in depth, had been completely drawn, and that the former support of the hanging wall had thereby been removed in two places 10 to 15 feet or more in height by 3½ feet in width. There is evidence also tending to show that no critical inspection of the condition of the walls had been made after the drawing of the stopes just alluded to, and that no work had been done in this stope for some time before the accident. This evidence, in our opinion, was sufficient to take the case to the jury on the issue of negligence tendered by the complaint. It tended to show that the hanging wall was in a dangerous condition; that defendant knew or in the exercise of reasonable care ought to have known it, and failed to exercise the required care to protect its employés therefrom. This all tended to show that defendant did not perform the primary and imperative duty resting upon a master to

exercise reasonable care to furnish a reasonably safe place for its employé to work in.

The admission found in defendant's answer that decedent was killed by a rock which fell from a hanging wall, taken in connection with the evidence to which attention has been called, is a sufficient answer to defendant's contention that the evidence relied upon to prove the cause of the accident was fatally uncertain and conjectural. It was, in our opinion, amply certain and sufficient to support the verdict rendered. It came nearer to a clear demonstration of the cause of the accident than a failure to show it. The array of authority on this point found in defendant's brief announces a salutary principle of law, but it has little, if any, application to the facts of this case.

Was the decedent employed to do work which in itself necessarily changed the character of the place with respect to safety, and was the duty of care for the continued safety of the place transferred from the master, where it primarily belonged to him? The decedent was not employed to do work which necessarily changed the character of the place for safety. The evidence discloses no conscious employment of that kind. He was employed as a laborer in the humblest sphere of service, to shovel muck at a designated place, without being informed or admonished that his action might occasion any dangerous consequence. He was put to work alone, in a dark mine, 400 feet below the surface of the earth, with no provision either of men, timber, or tools with which to make a repair if one became necessary. Decedent assumed no obligation to keep the place in repair, and in such circumstances the doctrine of the cases of American Bridge Co. v. Seeds, 144 Fed. 605, 75 C. C. A. 407, and Westinghouse, Church Kerr & Co. v. Callaghan, 155 Fed. 397, 83 C. C. A. 669, relied on by defendant, has no application.

Did the fall of the rock which killed decedent result from a latent defect which absolved defendant from liability for its consequence? This question has been sufficiently considered in discussing the issue of negligence. We there called attention to evidence, tending to show that defendant knew or ought to have known of the defective or dangerous condition of the hanging wall, and had reason to believe that it might fall as a result of the removal of the accumulated muck. On this issue the trial court charged the jury as follows:

"Now, if the defect in this hanging wall from which this slab of rock fell was a latent defect—that is, such a defect as the master by the use of ordinary care could not have discovered and guarded against—then the law relieves the master of any liability. Of course, if the master had actual knowledge of the defect, even though it may be said to have been a latent one, then the fact that it was latent would not be a defense to him."

To this there was no exception.

The finding of the jury necessarily disposed of this issue adversely to defendant's contention, and there was, in our opinion, sufficient evidence to justify it.

Did the decedent assume the risk of the injury which befell him? There is no assumption of risks and dangers by a servant resulting from negligent acts of the master unless such risks and dangers were known to or plainly observable by the servant. Kirkpatrick v. St. Louis

& S. F. R. Co., 159 Fed. 855, 87 C. C. A. 35; Chicago Great Western Ry. Co. v. McDonough (C. C. A.) 161 Fed. 657; Federal Lead Co. v. Swyers (C. C. A.) 161 Fed. 687.

It appears without contradiction that decedent had never worked in the stope, involved in this case, before. He was taken by the night foreman from the fourth level up a ladder to the top of the muck pile between the first and second chutes and directed to shovel down the muck into the chute as fast as the trammer required it. He was given no warning or intimation that the walls were not safe, or that the customary precautions after the drawing of the muck had begun had not been taken to make them safe. A little later he was found covered with rock that had fallen from the hanging wall at about the place where he was set to work. He was furnished with one candle only to light up the long, narrow, and dark chamber. The cracks and crevices in the hanging wall were, as the evidence tended to show, obscured from vision by dirt which had accumulated over them. In view of this and other like evidence, it is quite unreasonable to say that there was any evidence tending to show that he knew of the threatening danger, or that it was so patent as to be plainly observable by him. A fortiori the evidence did not so conclusively show these facts, or either of them, as to require an instructed verdict in favor of the defendant.

The facts just adverted to also dispose of the contention that the decedent contributed to his injury. There certainly was no conclusive showing that he failed to exercise ordinary care for his own safety. On the contrary, we think the jury was well warranted in finding, as it did on this issue, against the defendant.

It results that the trial court committed no error in refusing to instruct a verdict as requested by defendant.

It is assigned for error that the court below improperly charged the jury in certain specified respects, but reference to the record discloses no exceptions taken to such portions of the charge as are criticised, and we accordingly refrain from considering them.

It is also contended that the court erred in refusing to give certain instructions to the jury as requested by the defendant. These requested instructions are found on examination to be fairly covered by the main charge in so far as they expressed pertinent and correct principles of law, and no error was committed in refusing to restate them in different terms.

Some other questions were argued by learned counsel for defendant, but they are involved and necessarily concluded by the views already expressed. We think the whole record discloses that plaintiff had a meritorious cause of action, that it was fairly tried, and that no prejudicial error was committed against the defendant.

The judgment is accordingly affirmed.