OHIO COPPER MINING CO. v. HUTCHINGS et al.

(Circuit Court of Appeals, Eighth Circuit.   June 30, 1909.)

No. 2,745.

1. MASTER AND SERVANT (§ 221*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—ASSUMPTION OF RISK.

A miner, going to work in a place which he knew would otherwise be dangerous, in reliance on a representation by a superior, who represented the employer, that it had been protected and made safe, and where the insufficiency of the protection was not obvious, cannot be charged with having assumed the risk.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 221.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

2. DEPOSITIONS (§ 13*)—PERPETUATION OF TESTIMONY—CONSTRUCTION OF UTAH STATUTE.

Rev. St. Utah 1898, §§ 3466, 3467, provides for the perpetuation of the testimony of a witness on presentation by the applicant of a verified petition stating "(1) that the applicant expects to be a party to an action in ·a court in this state, and in such case the names of the persons whom he expects will be adverse parties; or (2) that the proof of some fact is necessary to perfect the title to the property in which he is interested, or to establish marriage, descent, heirship or any other matter which it may hereafter become material to establish, though no suit may· at the time be anticipated, or if anticipated he may not know the parties to such suit; and (3) the name of the witness to be examined," etc. Held, that it was the intention by such statute to prescribe in the first two paragraphs two separate and distinct classes of cases, in either of which tes-

timony might be perpetuated; that under the first the testimony of a person injured and not expected to recover might be taken and perpetuated for use in a contemplated action on behalf of his wife and minor children to recover for his death.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. § 28; Dec. Dig. § 13.*]

3. COURTS (§ 350*)—FEDERAL COURTS—USE OF DEPOSITIONS TAKEN TO PERPETUATE TESTIMONY.

Rev. St. § 867 (U. S. Comp. St. 1901, p. 664), providing that "any court of the United States may in its discretion admit in evidence in any cause before it any deposition taken in perpetuam rei memoriam which would be so admissible in a court of the state wherein such cause is pending according to the laws thereof," does not limit the use of such depositions to any particular cases, nor to those taken in any particular manner, but leaves such matters to be determined by the laws of the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 923; Dec. Dig. § 350.*]

4. MASTER AND SERVANT (§ 270*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—ACTIONS—EVIDENCE.

In an action to recover from a mining company for the death of a miner, who was killed by the falling of the roof of the entry in which he was working, alleged not to have been properly supported, testimony of an experienced mine timberman as to the ordinary practice in timbering in mines under similar conditions, as compared with what was done at the place of the accident, was admissible in support of such allegation.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 270.*]

In Error to the Circuit Court of the United States for the District of Utah.

C. S. Varian, for plaintiff in error.

T. Marioneaux (O. W. Powers, on the brief), for defendants in error.

Before HOOK and ADAMS, Circuit Judges, and PHILIPS, District Judge.

HOOK, Circuit Judge. The widow and children of Willard Hutchings, deceased, recovered a judgment against the Ohio Copper Mining Company for damages sustained by his death, alleged to have been caused by its negligence. The company says the trial court erred in (1) refusing its request for a directed verdict; (2) admitting a deposition of Hutchings taken in his lifetime as in perpetuam rei memoriam; and (3) admitting certain testimony of two witnesses.

There was substantial evidence of the following facts: The deceased was in the service of the company, which was engaged in mining in Bingham Canyon, Utah. The accident which resulted in his death occurred near the end or face of a drift at the 300-foot level. Owing to the unstable and treacherous character of the formation in that part of the mine, it was necessary, and it was the custom of the company, to follow up closely the extension of the drift with wooden frames or sets made of stout timbers or stulls and covered with slabs or lagging. The frames were about six feet in height and width, and a succession of them, when covered, made an entry along which the employés could move in the performance of their duties and be protected from rock and earth falling from above. The duty to construct these frames had

been intrusted by the company to employés called "timbermen." The miners, of whom the deceased was one, besides pursuing their ordinary duties in driving forward the face of the drift, also prepared the floor for the sills of the frames above referred to. While engaged in this latter work they were necessarily outside of the protection of the covered passage; and it was the duty and custom of the company, through its timbermen, to protect the miners while so engaged by placing headboards against the dangerous places above and by bracing them with stulls. The roof or hanging wall of the drift, from which the danger proceeded, ran at an angle of about 45 degrees to the plane of the floor. The deceased was on the night shift. While he was at work preparing the floor for the sills of a frame near the face of the drift, several tons of rock fell from the hanging wall and inflicted injuries which finally caused his death.

The night before this accident some rock had fallen and scared the men out, and this had been reported to a foreman charged with the duty of directing and superintending the timbering in the mine, and who was a vice principal, not a fellow servant, of the miners. On the night of the accident the deceased told the foreman he did not want to go in there; but the foreman said he had had it fixed up, and it was all right and safe enough. Relying upon this assurance, the deceased went to work, with the result mentioned. There was testimony that, instead of bracing headboards against the dangerous place on the hanging wall with stout stulls or timbers, a single headboard was used and the bracing was done by a single slab, clearly insufficient for the purpose. There was a conflict of evidence upon this subject, but we think there was proof tending to support the claim of the plaintiffs so substantial that the trial court would not have been justified in directing a verdict for the company. The specific negligence upon which recovery was had was that of the foreman in making the representation to induce the deceased to go to work.

It is also urged that the evidence disclosed an assumption of the risk by the deceased. We do not think so. The place was dark, save as it was illumined by an ordinary candle, which it was the custom of the miner to place on a ledge or niche in the wall of the drift. The bracing that had been done was above him, and was doubtless indistinct. Had he observed it in the gloom, it is questionable he could have told without particular inspection whether headboards had been properly placed, and, if so, whether braced by stull or slab. He knew that, unprotected, the place was dangerous; but he also knew that men in another branch of the service were specially charged with the duty of safeguarding it, and he was entitled to rely upon the representation of performance of that duty made by a superior who spoke for his employer, unless its untruthfulness was manifest. It was not incumbent on the deceased to make effort or take care to discover whether the assurance of safe condition given him was true, and we are unable to say that the insufficiency of the precautions adopted were so patent as to be readily observable by him. In such a situation there is no assumption of the risk. Kirkpatrick v. Railroad, 159 Fed. 855, 87 C. C. A. 35; M., K. & T. Ry. Co. v. Wilhoit, 160 Fed. 440, 87 C. C. A. 401; Chicago, M. & St. P. Ry. Co. v. Donovan, 160 Fed. 826, 87

C. C. A. 600; Chicago Great Western Ry. Co. v. McDonough, 161 Fed. 657, 88 C. C. A. 517; Federal Lead Co. v. Swyers, 161 Fed. 687, 88 C. C. A. 547; Western Inv. Co. v. McFarland (C. C. A.) 166 Fed. 76; United States Smelting Co. v. Parry (C. C. A.) 166 Fed. 407.

While Hutchings was in a hospital, not expected to live, his deposition was taken in a proceeding instituted by his wife on behalf of herself and their minor children under a Utah statute providing for the perpetuation of testimony. After his death the widow and children brought their action in a state court, whence it was removed to the Circuit Court on the application of the company. The deposition, which contained material testimony bearing on the vital issues of the case, was read at the trial over the objection of the company. It is contended (a) that the state statute did not authorize the perpetuation of testimony for use in such an action; (b) that the deposition was not taken in perpetuam rei memoriam within the meaning of the federal statute (section 867, Rev. St. [U. S. Comp. St. 1901, p. 664]), authorizing the use in the courts of the United States of testimony so taken; and (c) that the plaintiffs did not at the time it was taken have a present interest in an existing subject of litigation. The Utah statute (Rev. St. 1898, c. 56) provides as follows:

"Sec. 3466. The testimony of a witness may be taken and perpetuated as provided in this chapter.

"Sec. 3467. The applicant must produce to a district judge a petition verified by his oath stating: (1) That the applicant expects to be a party to an action in a court in this state, and in such case the names of the persons whom he expects will be adverse parties; or (2) that the proof of some fact is necessary to perfect the title to the property in which he is interested, or to establish marriage, descent, heirship, or any other matter which it may hereafter become material to establish, though no suit may at the time be anticipated, or if anticipated he may not know the parties to such suit; and (3) the name of the witness to be examined, his place of residence and a general outline of the facts expected to be proved."

Then follow in the same and succeeding sections detailed provisions relating to procedure, notice, etc., all of which were complied with. Counsel representing the company cross-examined the witness.

It is contended that the state statute should be construed as authorizing the perpetuation of testimony only in cases specifically described in the second paragraph of section 3467—that is to say, cases involving the title to property or the fact of marriage, descent, or heirship, etc.— and that the broader language of the first paragraph should be accordingly limited. In other words, the contention is that the statute does nothing more than to provide a short and speedy substitute for the ancient practice in courts of chancery, which was, generally speaking, confined to the subjects mentioned, and did not embrace personal injuries as the basis of an anticipated action at law. But to reach this construction counsel would have us read as "and" the disjunctive "or" which co-ordinates the first two paragraphs of the section. Commonly the word "or" marks the alternative, and, though it has other meanings, and may be read "and" where the context seems to require it, we think it manifest that the legislative intent was to prescribe two separate and distinct classes of cases, in either of which testimony might be perpetuated, first, for use in any action in a court in the state to

which the applicant expects to be a party and when he can name the persons he expects will be his adversaries; and, second, to prove some fact relating to title or to establish marriage, descent, etc., though no suit be anticipated, or, if anticipated, his adversaries are unknown. The use of "and" to connect the third paragraph of the section with those preceding indicates that the common function of the word "or" between the first two was intentionally employed. In other words, the statute seems plain that a person desiring to perpetuate the testimony of a witness may do so if his case is within either of the first two paragraphs, but in any event he must comply with the third. That the Utah statute as so construed is an innovation will not justify us in ignoring its clear terms. Indeed, we perceive no reason why a state may not authorize the perpetuation of testimony for use in cases like that at bar, particularly when, as here, proper safeguards are prescribed to prevent abuse and protect the rights of those to be affected.

Nor is there anything in the federal statute (Rev. St. § 867) restricting the use of testimony so taken to the limited class of cases embraced in the ancient practice. It provides:

"Any court of the United States may, in its discretion, admit in evidence in any cause before it any deposition taken in perpetuam rei memoriam, which would be so admissible in a court of the state wherein such cause is pending, according to the laws thereof."

The phrase "in perpetuam rei memoriam" is descriptive of the general character of the depositions intended, and was not designed to prescribe the particular cases in which they might be taken or the particular procedure to be followed. That was left to the laws of the states, subject as to their admission in evidence when so taken, to the discretion of the court of the United States to be exercised in the interest of justice.

It is also urged that, as plaintiffs' cause of action did not arise until the death of Hutchings, they had not, when his testimony was taken, such a present, vested interest in a subject-matter of litigation as authorized the proceeding. Here again are invoked the old rules that obtained in the chancery practice. Doubtless a court of the state would decline to make an order for taking testimony in perpetuam in a case of this character unless the applicant showed a substantial expectancy of an action and interest therein. Moreover, the interest of the moving party and the circumstances and procedure must be such as to appeal to the discretion of the court of the United States where the testimony is offered as proof. Here every element of a complete right of action in the widow and children existed, save Hutchings' death, and that was imminent. There was a potential right of action, which we think was sufficient under the statute.

A witness of 18 years' experience in mining, 12 or 14 of which was as a timberman, testified to what was customarily or usually done in mines to support treacherous and unstable ground and to protect the miners therefrom, and then he was allowed to compare the ordinary practice with what he observed at the point of the accident. This was admissible. What was ordinarily done in other mines with reference to like conditions, while not the measure of reasonable care, is competent evidence thereof. Another witness of 12 years' experience as

a timberman in mines, who was at the place of accident shortly after it happened, and who knew the character of the formation of the hanging wall, was allowed to testify that it was practicable to have supported it with headboard and stull. This also was admissible.

The judgment is affirmed.