## CENTRAL COAL & COKE CO v. WILLIAMS.

(Circuit Court of Appeals, Eighth Circuit.    October 15, 1909.)

### No. 2,992.

1. MASTER AND SERVANT (§ 217*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—ASSUMPTION OF RISK FROM UNSAFE PLACE.

A servant has the right to assume that the master has performed his duty to provide and maintain a reasonably safe place in which to work, and is not required to exercise care to ascertain such fact, but assumes the risk from an unsafe place only where he knows it to be unsafe, or its dangerous condition is obvious.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

2. EVIDENCE (§ 474*)—OPINION EVIDENCE.

In an action by an employé against a mining company to recover for a personal injury caused by the falling of a rock from the roof of an entry, where there were issues as to whether the roof was unsafe, and, if so, whether defendant should have known it in the exercise of reasonable care, it was not error to admit in evidence the opinions of practical miners familiar with the place, to aid the jury on such issues, which were presumably unfamiliar to the ordinary juror.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2200, 2204, 2214; Dec. Dig. § 474.*]

In Error to the Circuit Court of the United States for the Western District of Arkansas.

Action by John Williams against the Central Coal & Coke Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Williams sued the coal company for damages resulting from personal injuries sustained by him while mining coal in a mine operated by the company. The complaint was that defendant failed to observe proper care to keep a roof of an entry in the mine, where the miners were required to keep their powder and fuse and make up their cartridges, in a reasonably safe condition; that as a consequence, while plaintiff was in that entry making up cartridges in the usual and proper course of business, a rock fell from the roof and injured him. Defendant denied the alleged want of care, and pleaded that plaintiff knew, or by the exercise of ordinary care could have known, of the dangerous condition of the roof, and by remaining in defendant's employ assumed the risk of its falling. It also pleaded contributory negligence by the plaintiff and negligence of his fellow servants as the proximate cause of his injury. The cause went to trial on these issues before a jury, and resulted in a verdict and judgment for plaintiff, to reverse which defendant prosecutes error.

Ira D. Oglesby, for plaintiff in error.

James Brizzolara and Henry L. Fitzhugh, for defendant in error.

Before HOOK and ADAMS, Circuit Judges, and CARLAND, District Judge.

ADAMS, Circuit Judge (after stating the facts as above). Much evidence was offered to sustain the issue, tendered by the answer, that plaintiff might in the exercise of ordinary care have discovered the dangerous character of the roof in question, and the court charged the jury that the duty devolved upon the master to exercise reasonable care to make the entry in question reasonably safe and secure, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

properly told the jury that the servant had a right to presume that the master had performed his duty and to proceed with his work in reliance upon that presumption; but the court qualified this correct exposition of the law by adding:

"Unless a reasonably prudent man, in the performance of his work as a miner, would have learned facts from which he would have apprehended danger to himself, in which event the law would not permit him, if he knew, or by the exercise of reasonable care might have known, that the roof of the entry was unsafe, insecure, and dangerous to proceed to work underneath the same; and, if he did so, he assumed the risk and cannot recover."

This in effect told the jury that a servant entering or continuing in the employ of a master is charged with the affirmative duty of exercising reasonable care to find out whether the place provided for him to work in is safe. We have repeatedly held that no such obligation is imposed upon the servant. He has a right to assume that the master has performed his whole duty and that the place is reasonably safe. It is only when it is known by the servant not to be safe, or when it is patent to or plainly observable by him that it is not safe, that the servant assumes the risk of danger. Kirkpatrick v. St. Louis & S. F. R. Co., 159 Fed. 855, 87 C. C. A. 35; Chicago Great Western R. Co. v. McDonough, 161 Fed. 657, 88 C. C. A. 517; Federal Lead Co. v. Swyers, 161 Fed. 687, 88 C. C. A. 547; United States Smelting Co. v. Parry, 166 Fed. 407, 92 C. C. A. 159; Western Inv. Co. v. McFarland, 166 Fed. 76, 91 C. C. A. 504; Ohio Copper Min. Co. v. Hutchings (C. C. A.) 172 Fed. 201. The court below, therefore, declared the law more favorably to the defendant than should have been done.

One of the defendant's main contentions is that the evidence conclusively established that Williams was not in the entry where the powder and fuse were kept, and where he was required to make up his cartridges, but was out in a dangerous and abandoned cross-cut, where he was not required or expected to be, and received his injury from a rock falling while there. It is claimed he was thereby guilty of such contributory negligence as precluded recovery by him, and that the trial court erred in refusing to instruct the jury to find for the defendant as requested. After a careful reading of the record, we are satisfied that there was substantial evidence tending to show that Williams received his injury while at work in the entry as claimed by him. The learned trial judge charged the jury explicitly that if he was not injured while in the entry, but chose of his own accord to go into the cross-cut, and while there was injured, he could not recover. The verdict for plaintiff necessarily responded to this issue adversely to defendant's contention, and is conclusive upon us.

Exception was also taken to certain parts of the charge, which stated to the jury in effect that a primary duty rested upon the defendant to so inspect the roof of the entry in question as to maintain it in a reasonably safe condition, and to keep in its employ an inspector whose duty it was to look after the roofs of the entries. It is contended that these and other like expressions imposed the duty upon the master to procure and keep in its service a separate inspector, whose duty it was to look after the roof of the entries.

We do not think the charge as a whole conveys any such meaning. Its manifest purpose was to advise the jury of the undoubted law that a duty rested upon some one or more of the agents of the defendant, through whom only it could act, to perform the primary duty imposed upon the master. As so interpreted, there was no error.

Defendant also excepted to, and specifies as error, the action of the trial court in admitting over its objections the opinions of certain witnesses of large practical experience in coal mining as to whether an experienced miner could determine when a rock was loose in the roof of the entry, or when the roof was unsafe, and also as to whether the entry or roof in question was in fact in a safe condition at the time the plaintiff was injured. It is insisted that these questions substituted the opinion of witnesses for that of the jury, and encroached upon the latter's exclusive province. We think this insistence is untenable. The important issues in the case were whether the roof was actually unsafe, and, if so, whether the defendant in the exercise of ordinary care should have known it. Evidence was, of course, admissible touching the actual physical condition of the entry, and we think the opinion of experts, familiar with the physical condition and operation of the mine, concerning the subjects of inquiry, were also admissible.

This is not a new question with this court. In the very recent case of United States Smelting Co. v. Parry, supra, this court, speaking by Judge Van Devanter, said the general rule limiting the testimony of witnesses to primary facts within their knowledge is subject to certain qualifications; one of them being that a witness "possessed of special training, experience, or observation in respect of the matter under investigation may testify to his opinion, when it will tend to aid the jury in reaching a correct conclusion—the true test being, not the total dependence of the jury upon such testimony, but their inability to judge for themselves as well as is the witness." An exhaustive review of the authorities sustaining the proposition announced is then taken up. It was further remarked in that case that:

"The tendency of modern decisions is not only to give as wide a scope as is reasonably possible to the investigation of such questions, but also to accord to the trial judge a certain discretion in determining what testimony has a tendency to establish the ultimate facts, and to disturb his decision admitting testimony of that character only when it plainly appears that the testimony had no legitimate bearing upon the questions at issue and was calculated to prejudice the minds of the jurors."

The doctrine of that case received the unanimous approval of all the judges then sitting, and commends itself to our most favorable consideration. It is inconceivable that the opinions of practical mining operatives touching the questions under review would not greatly aid the jury in the performance of its only legitimate function, to reach a correct conclusion. The subject about which the testimony was elicited was underground mining operations familiar to the witnesses as a result of actual experience, and presumably not familiar to the ordinary juror. On the authority of the Parry Case,

~we conclude that no error was committed in the reception of the evidence complained of.

This record presents a condition of things in many respects like that involved in Western Investment Co. v. McFarland, supra, in which we held the defendant liable. The plaintiff was set to work in a dark mine, lighted only by the dim and ineffectual light of a candle or lamp in the miners' hats. He had never worked there but a day or two before he was injured, and knew little of the inside of the mine. The recentness of his employment and the natural desire to continue in it had a tendency to make him complacent with his surroundings. He had a right, according to well-established law, to rely upon the owner doing its duty and furnishing him a reasonably safe place to work in, and did so. The testimony discloses that defendant flagrantly failed to discharge this duty; that it negligently, if not recklessly, allowed a dangerous condition of the roof of the entry to menace the safety of its employés, who were required to work under it. This constituted, not only a failure to discharge a legal duty, but a violation of the plainest dictates of humanity. As a result of it the plaintiff was hurt, and the defendant ought to be held responsible for his damages.

Finding no errors prejudicial to the defendant, the judgment is affirmed.