**DETROIT TAXICAB & TRANSFER CO. v. CALLAHAN (two cases).**

(Circuit Court of Appeals, Sixth Circuit. October 17, 1924.)

Nos. 4025, 4026.

1. **Carriers** ⟐=318(7)—**Verdict against taxicab company for injury in collision sustained.**

A verdict holding a taxicab company liable for injury to passengers being transported through the streets of a city on a dark, misty morning, after a heavy rain, through a collision caused by the skidding of the cab in a subway under railroad tracks, *held* sustained by the evidence, where the driver was familiar with the streets, and knew that the road through the subway was always dangerous for motor vehicles, that it was subject to overflow from a sewer during rains, and was then the most dangerous place in the city, but drove into it at usual speed, without taking any special precautions.

2. **Evidence** ⟐=538—**Chauffeurs competent as experts as to dangerous condition of street.**

Testimony of chauffeurs employed in driving cars in a city and familiar with its streets is competent, as that of experts, as to the usual and unusual condition of a particular street or place for motor travel in differing weather conditions.

In Error to the District Court of the United States for the Eastern District of Michigan; Charles C. Simons, Judge.

Actions at law by Edward H. Callahan and by Bertha Callahan against the Detroit Taxicab & Transfer Company. Judgments for plaintiffs, and defendant brings error. Affirmed.

Wm. E. Tarsney, of Detroit, Mich., for plaintiff in error.

Fred A. Behr, of Detroit, Mich. (Behr & Coolidge, of Detroit, Mich., on the brief), for defendants in error.

Before DENISON and DONAHUE, Circuit Judges, and SATER, District Judge.

SATER, District Judge. These cases were brought by husband and wife against the Detroit Taxicab & Transfer Company. The wife asked for damages for injuries received, and the husband for expense incurred on account of such injuries and for loss of her services. Verdicts having been returned in their favor, the defendant below prosecutes error.

[1] The defendant undertook to transport the plaintiffs in an electric taxicab operated by one of its employés from a steamboat landing in the city of Detroit to the Michigan Central depot in that city. As the driver approached the depot from the south, in order to pass under the tracks of the Michigan Central Railroad, he was required to descend quite a slope on Eighteenth street to Newark avenue, thence to proceed westwardly on the last-named street to a public subway under such tracks, and thence in a northwesterly direction through such subway. The journey was undertaken about 8 a. m. It rained earlier in the morning, and quite hard the night before. It was a dark, misty morning. On account of the wet, slippery condition of the streets, automobiles were subject to skidding. To prevent the taxicab in question from skidding, its right rear wheel had been provided with a chain. The water from a sewer below or in the vicinity of the subway would, in case of heavy rains, back up and overflow such subway to a depth of three or four feet. When an overflow occurred, a deposit of slime and filth was left on the subway floor and its approaches. This produced a slippery condition which caused automobiles to skid. The driver knew that in wet, rainy weather the area under and in the vicinity of the subway, *and extending to the intersection of* Newark and Eighteenth streets was dangerous, and necessitated extra precaution in driving into it, and that at the intersection of Newark street and the public subway "the area always had been skiddy." Another automobile driver, familiar with the surroundings, characterized the subway area as very dangerous for automobile travel.

There is undisputed evidence that on occasions of heavy rains the place is the most dangerous in the city for traffic of the kind mentioned, and that the greater a car's speed the greater is its skidding. The rain on the

night preceding the accident had caused an overflow of the sewer and a deposit of the character above mentioned from an inch to an inch and a half in depth. The condition at the subway was the worst the driver of this car had ever seen there. He had gone under the viaduct—i. e., through the subway —almost daily for six months, and had driven cars for about three years. He estimated the speed of his car, as he descended the slope on Eighteenth street, to be 15 miles an hour, and about 13 miles per hour on Newark street at the point where he attempted to turn into the subway, at or about which place his car, which had never skidded before, began to skid on account of the filth and mud. As he entered under the viaduct he threw off his power, thereby reducing his speed, so he claims, to about 10 miles per hour. The conditions as to light under the viaduct were poor, and, prior to the commencement of his car's skidding, he saw nothing to indicate that the condition of the subway was the worst it had ever been before to his knowledge; but he knew at the time it was very slippery and was always more slippery in rainy weather. He approached the subway in the same manner and with the same rate of speed as he had always been accustomed to employ. He testified that, if he had observed any unusual condition of the subway, he would have approached it more cautiously; but he made no investigation and drove as he did every day. His machine skidded from the right side of the subway a distance variously estimated from 35 to 60 feet to the west side, and was there struck with great violence by a car going east. As the result of the collision, Mrs. Callahan was seriously injured.

From the foregoing facts, the greater portion of which are found in the driver's evidence, it appears that, with full knowledge that it had rained "very heavily," causing the streets generally on the surface even to become so slippery that automobiles would skid, that the area under and in the vicinity of the subway was dangerous and always more slippery in rainy weather and in the case of hard rains was covered by the overflow of the sewer with mud and filth, and that the visibility under the viaduct was "very poor," he attempted to drive into such area without any investigation as to its condition, and without the exercise of any greater precaution, and with no less rate of speed than used on other days. In so doing he did not use that high degree of care which the law imposes on a common carrier,

such as the defendant was. Stokes v. Saltonstall, 13 Pet. 181, 10 L. Ed. 115. The jury was abundantly warranted in finding the defendant guilty of negligence and liable for damages.

We are not unmindful of the evidence of defendant's garage manager, who built the electric car in question, that its rate of speed could not have exceeded at any time more than about 10 miles per hour. An experienced truck driver, who saw the car when skidding, testified that it was going at about 20 miles per hour, in which he is corroborated by its occupants.

Error is predicated on the admission of and refusal to exclude evidence given by experienced chauffeurs acquainted with the subway, who described its usual as well as its unusual conditions, and stated it was a dangerous place, especially after hard rains, and was so regarded by automobile drivers. We are of the opinion the evidence was competent as coming from experts. In Chandler v. Thompson (C. C.) 30 Fed. 38, touching expert evidence, it was said:

"Every business or employment requiring peculiar knowledge or experience, and which has a particular class of persons devoted to its pursuit, is an art or trade; and any person who, by study or experience, has acquired this peculiar knowledge and practical skill, may be allowed to give in evidence his opinions upon such matters of technical knowledge and skill, within the limits of his business, to enlighten the minds of a jury, where they have to determine such matters in a pending trial."

[2] A chauffeur falls within the class above mentioned. He is one hired to drive a motor vehicle, a professional operator driving for another, and this implies that driving is his chief, and not his incidental, employment. Babbitt, Motor Vehicles, § 357. His work is attended with danger, and requires a degree of scientific knowledge upon which others must rely. It requires special training, and he is classified by courts and text-writers as a skilled workman. See Babbitt, Motor Vehicles, § 362, and authorities cited. Other cases in point as to the admissibility of the evidence as that of experts are Central Coal & Coke Co. v. Williams (C. C. A. 8) 173 Fed. 337, 97 C. C. A. 597; United States Smelting Co. v. Parry (C. C. A. 8) 166 Fed. 407, 92 C. C. A. 159; Cross v. L. S. & M. S. Ry. Co., 69 Mich. 363, 37 N. W. 361, 13 Am. St. Rep. 399; Kelley v. Richardson, 69 Mich. 430, 37 N. W. 514; Alabama Mineral R. R. Co. v. Jones, 114 Ala.

519, 21 South. 507, 62 Am. St. Rep. 121; Bridger v. Railroad Co., 25 S. C. 24.

Other points argued have been considered, but discussion of them is not deemed necessary.

The District Court is affirmed.